**Frank Joe MOLINAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–94–00219–CR.**

Court of Appeals of Texas,
El Paso.

Sept. 21, 1995.

---

Eric L. Lindstrom, Midland, for appellant.

Al W. Schorre, Jr., District Attorney of Midland County, Midland, for State.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

Frank Joe Molinar appeals from a conviction for the offense of murder. The jury found appellant guilty and assessed his punishment at imprisonment for a term of thirty years. The trial court entered in the judgment an affirmative finding on the use of a deadly weapon as required by TEX.CODE CRIM.PROC.ANN. art. 42.12 § 3g(a)(2) (Vernon Supp.1995). We affirm.

### SUMMARY OF THE EVIDENCE

The evidence at trial showed that the victim, Alfredo "Chico" Lujan (Lujan), worked at a car wash with Theresa Herebia (Theresa), appellant, and appellant's wife, Lisa Molinar (Lisa). They considered themselves to be close friends and often socialized. Approximately two weeks before this incident, Lujan and Theresa had left their respective

spouses[1] and had begun living together. On the morning of the offense, Theresa and Lujan moved their personal property into the Molinars' home for a few days until they could get a place of their own. The four of them drank beer during the move and throughout the remainder of the day up until the time of the stabbing. Late in the evening, Lisa and appellant began to argue. Lujan and Theresa separated appellant and Lisa and momentarily calmed them down. While Theresa and Lujan planned which apartment they were going to rent later that week, the Molinars began to fight again. Theresa characterized the arguments as loud and violent. During this particular argument, appellant struck Lisa. Once again, Lujan and Theresa broke up the argument, and Lujan chastised appellant for striking Lisa. After Lujan and appellant exchanged words, Lujan sat back down with Theresa. When appellant and Lisa began to argue a third time, Lujan intervened again. Lujan, who had a large beer bottle in his hand, moved quickly towards appellant. Lisa saw appellant pull out a knife from a sheath on his belt, and she saw the knife after appellant pulled it out of Lujan, but she did not see appellant stab Lujan. Before falling to the floor, Lujan said "He shaffled me," which Lisa interpreted to mean "He stabbed me." Lisa told Theresa that "Chico has been stabbed. Frank just stabbed him." Appellant asked Lisa to leave with him, but she refused. Lisa lifted Lujan's shirt and both women became hysterical when they saw part of his intestines protruding through the wound in his abdomen. After appellant left the apartment, Lisa called 911, and police and an ambulance soon arrived. One of the police officers removed Theresa from the apartment and placed her in a patrol car.

After appellant left his apartment, he went to the home of Theresa's husband, Robert Herebia (Robert), and told him that he had just stabbed Lujan and he thought he had killed him. He did not tell Robert that it was an accident or that he stabbed Lujan in self-defense. Robert, who knew of Theresa's affair with Lujan, told appellant that he wanted to go over to the Molinars' home to check on Theresa's welfare. While Robert drove appellant's car, appellant pulled the knife out from beneath the seat and showed it to Robert. Robert saw blood "or something" on the blade. When they arrived at appellant's apartment, Robert saw several police officers in the driveway. Appellant told Robert not to stop, but when Robert saw Theresa in the backseat of one of the police cars, he stopped. Police officers quickly arrested appellant and retrieved the knife from his car. The autopsy revealed that Lujan died as a result of the stab wound which penetrated five inches into his abdomen.

Appellant testified at trial that while he was talking with Lisa, Lujan approached him rapidly with a beer bottle in his hand. Appellant took his knife out in an effort to scare Lujan. He said that he did not remember what happened, but Lujan ended up on the floor. Appellant explained that he left the apartment because he panicked.

The trial court included in the jury charge an instruction on voluntary conduct and on the lesser-included offenses of involuntary manslaughter and criminally negligent homicide. The jury rejected appellant's defenses and found him guilty of murder as charged in the indictment.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Point of Error One, appellant contends that he was denied the effective assistance of counsel at both the guilt-innocence and punishment phases of his trial. We will first address the allegations concerning the guilt-innocence phase of trial.

### Guilt–Innocence

The proper standard for determining claims of ineffective assistance under the Sixth Amendment is the two-prong analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first component of the *Strickland* standard, the defendant must show that counsel's performance was deficient, to the extent that counsel failed to function as the

---

1. Theresa was married to Robert Herebia. Lu- jan was married to Antricia Hernandez.

"counsel" guaranteed by the Sixth Amendment. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). To carry this burden, the defendant must show that his attorney's representation fell below an objective standard of reasonableness under prevailing professional norms. *Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Crim.App.1992). Under the second component, the defendant must show that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Jackson,* 877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697; *Jackson,* 877 S.W.2d at 771; *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App.1986).

■■■ In reviewing claims of ineffective assistance, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and appellant must overcome the presumption that the challenged conduct can be considered sound trial strategy. *Jackson,* 877 S.W.2d at 771; *Lyon v. State,* 885 S.W.2d 506, 519 (Tex.App.—El Paso 1994, pet. ref'd). Allegations of ineffective assistance of counsel will be sustained only if they are firmly founded in the record. *Holland v. State,* 761 S.W.2d 307, 319 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *Lyon v. State,* 885 S.W.2d 506, 519 (Tex.App.—El Paso 1994, pet. ref'd). The defendant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Jackson,* 877 S.W.2d at 771; *Lyon,* 885 S.W.2d at 519. Although appellant filed a motion for new trial, he did not raise an ineffective assistance of counsel allegation. As a result, we are presented with a record which does not reveal counsel's trial strategy for any of the challenged actions or omissions.

### 1. Voir Dire

■■■ Appellant first complains that trial counsel consistently conveyed to the jury that counsel believed that appellant was guilty. Having reviewed the entirety of the voir dire proceeding, we cannot agree with this characterization of counsel's performance. Trial counsel discussed at length his role in the trial, the differences between the various grades of homicide and their punishment ranges, and the concept of justification as a defense. When taken in context, nothing in counsel's voir dire could be reasonably read as conveying the idea that counsel believed appellant to be guilty of murder. *See Butler v. State,* 872 S.W.2d 227, 243 (Tex. Crim.App.1994) (counsel's reference to a possible appeal did not convey impression that he believed appellant would be convicted and assessed the death penalty).

Appellant also attacks counsel for excluding female and Hispanic venirepersons from the jury through challenges for cause and peremptory challenges. He contends that this action by counsel resulted in an exclusively white male jury. The record does not reflect the racial, ethnic, or gender composition of the venire or the jury ultimately chosen. Likewise, the record does not reflect counsel's trial strategy in making the challenges for cause or peremptory challenges. We will not speculate as to his reasons in that regard. Appellant has failed to overcome the presumption that the challenged conduct can be considered sound trial strategy.

### 2. Calling Appellant/Appellant's Wife to Testify

■■■ Appellant asserts that counsel was ineffective because he convinced Lisa Molinar to waive her marital privilege under TEX. R.CRIM.EVID. 504(2)(a) and testify at trial. Based upon statements made by the parties and the trial court, it appears that Lisa had vacillated with regard to whether she would testify or assert her marital privilege. Trial counsel stated that he had discussed the matter with Lisa, and she had agreed to testify after realizing that her testimony would be in appellant's best interest. After the state indicated its intent to call Lisa as a witness, the trial court held a hearing outside the presence of the jury to determine whether Lisa wished to assert her privilege. The trial court advised Lisa of her right to refuse

to testify based upon the marital privilege and asked whether she wished to waive it. Without any prompting from either party, Lisa waived her privilege and voluntarily testified. Appellant assumes that Lisa waived her privilege solely as a result of trial counsel's discussion with her. Other than counsel's single statement about that discussion, there is no evidence of what was said or why Lisa actually decided to waive her privilege and testify. We are not free to speculate in this regard. Because appellant has failed to present a sufficient record in which the alleged deficiency of counsel is firmly established, this contention will not be sustained.

### 3. Failure to Object to Certain Evidence

■■■■■ Appellant next assails counsel's failure to object to several items of evidence.[2] With regard to appellant's complaint that counsel should have objected to certain portions of the trial testimony on the ground of hearsay, we have reviewed each statement and find that a hearsay objection was not required because the particular statement was not hearsay or was admissible pursuant to an exception to the hearsay rule. In fact, to raise such an objection as suggested by appellant would have been, in some instances, frivolous.

■■■■ Appellant argues next that counsel should have objected to Robert Herebia's testimony that Appellant was proud of his knife on the ground it was a leading question and called for speculation. When the prosecutor asked Robert whether he had seen the knife prior to the night of the stabbing, Robert replied that appellant had shown the knife to him on a prior occasion. In an apparent effort to find out why appellant had shown the knife to him, the prosecutor asked, "Apparently, something he was proud of?" Robert replied, "I guess he was." While counsel could have objected to the prosecutor's question, there is no showing of preju-

dice, particularly given Robert's ambivalent answer.

■■■■ Appellant also complains of counsel's failure to object to the prosecutor's question of Robert, "He just said he did it?" as being vague and ambiguous. The prosecutor asked this question after eliciting testimony from Robert that appellant told him he had stabbed the victim, but had made no mention of self-defense or an accident. Even assuming the objection is valid, there is no showing that had it been raised, the prosecutor could not have rephrased his question and elicited the desired information from Robert. Consequently, appellant has failed to establish the prejudice component of *Strickland.*

■■■■ Appellant asserts that counsel should have objected to the admission of an extraneous offense; namely, that appellant struck Lisa during their argument. It was this action by appellant that caused Lujan to intervene in the argument, which, in turn, led to the stabbing. Thus, counsel could have determined that this action was admissible as same transaction contextual evidence. *See Nelson v. State,* 864 S.W.2d 496, 498–99 (Tex. Crim.App.1993); *Camacho v. State,* 864 S.W.2d 524, 532–35 (Tex.Crim.App.1993); *Gillum v. State,* 888 S.W.2d 281, 285 (Tex. App.—El Paso 1994, pet. ref'd). Further, counsel could have reasonably determined that the trial court would not sustain a Rule 403 objection because the evidence was necessary to the jury's understanding of the instant offense, and there is no showing that it would cause an undue tendency to suggest decision on an improper basis. *See Montgomery v. State,* 810 S.W.2d 372, 389 (Tex. Crim.App.1991) (op. on reh'g); *Mock v. State,* 848 S.W.2d 215, 223 (Tex.App.—El Paso 1992, pet. ref'd). Counsel's failure to object to this evidence is not deficient performance.

■■■■ Next, appellant contends that the following question by the prosecutor during

---

2. In a footnote, appellant asks the Court to also consider each complaint concerning the admission of these items of evidence as assignments of error in the event we overrule his first point of error. We decline to do so for three reasons. First, raising eleven alternative contentions in a footnote is an inappropriate method of presenting error on appeal. *See* Tex.R.App.P. 74(d).

Second, by combining multiple complaints in a single point of error, the point of error is multifarious. *See Black v. State,* 816 S.W.2d 350, 358 n. 11 (Tex.Crim.App.1991); *Euziere v. State,* 648 S.W.2d 700, 703 (Tex.Crim.App.1983). Third, as noted by appellant, no objections were raised to this evidence at trial. Thus, the asserted errors are not preserved. Tex.R.App.P. 52(a).

Lisa Molinar's testimony was objectionable as leading and misstated the prior evidence: "And Chico got up and walked over to get between you, after Frank hit you, is that right?" There is no showing that had counsel raised these objections, the prosecutor could not have rephrased the question and elicited the same testimony. Further, there is no showing of prejudice.

■ Finally, appellant claims that counsel should have objected to the prosecutor's question of appellant, "Wouldn't you assume or guess with me that sticking a knife five inches into somebody is going to take a little bit of muscle?" The prosecutor asked a similar question on two other occasions. Appellant argues that the question called for appellant to speculate about matters not shown to be within his personal knowledge. Our review of the record reveals that the prosecutor asked these questions in an effort to counter the defensive theory that the stabbing was not voluntary conduct. Because counsel could have concluded that the questions were permissible as asking for a lay opinion under Tex.R.Crim.Evid. 701, he did not err in failing to object.

### 4. Failure to Investigate

■ Appellant contends that by failing to adequately investigate the facts of this case, trial counsel failed to discover a witness, Antricia Hernandez, who would have testified that only two days before the stabbing, Robert Herebia had threatened to hurt or kill Lujan because of his affair with Robert's wife, Theresa.[3] He argues that counsel could have used this testimony to impeach Robert. Among counsel's duties is that of making an independent investigation of the facts of his client's case. *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986); *Ex parte Ewing,* 570 S.W.2d 941, 947 (Tex.Crim.App. 1978). As part of this duty, counsel has a responsibility to seek out and interview potential witnesses and failure to do so is to be ineffective, if not incompetent, where the result is that any viable defense available to the

accused is not advanced. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Butler,* 716 S.W.2d at 54.

During the course of trial, Hernandez had learned of the case through news coverage and called the District Attorney's Office. She spoke to Rochell Buck, who is assigned to the Victim Assistance Program, and told her that appellant and Robert Herebia had been at her house the night before the stabbing and had told her that they were looking for Lujan so that they could kill him. She also stated that Robert had paid appellant to kill Lujan. At the motion for new trial hearing, Hernandez testified that Robert and appellant came by her home looking for Lujan two days before the stabbing incident. She said that Robert told her that he was going to hurt Lujan, but she denied telling Buck that Robert had said that he was going to kill him. Robert and appellant retrieved some of Theresa's clothes from the trunk of Hernandez's car and then left. Hernandez also related that Robert came to her home the following day by himself and stated that he was not going to beat up Lujan, but he just wanted to talk to Theresa. Although Hernandez spoke to a detective prior to trial, she made no mention of this information.

This contention is without merit for two reasons. First, there is no showing that counsel would have discovered this information even if he had interviewed Hernandez prior to trial since she failed to give the information to the detective investigating the case. Second, and perhaps more importantly, appellant fails to recognize that while the testimony of Hernandez may have served to impeach Robert by implicating him in this offense, it also tends to show premeditation on appellant's part. As such, it would certainly cut against appellant's defense that he accidentally stabbed Lujan. Therefore, even if counsel had discovered this information prior to trial, he may well have decided not to use it. Because appellant has not established that counsel's failure to interview Hernandez resulted in the non-advancement of a

---

**3.** Appellant does not allege that counsel was ineffective for failure to discover two other witnesses, Susanna Clemmons and James Nelson, who were also aware of a statement by Robert

Herebia that he was going to hurt Lujan. Their testimony will be discussed in Point of Error Two.

viable defense, this argument is without merit.

In conjunction with his complaint that trial counsel failed to adequately investigate the facts of this case, appellant also asserts that counsel's cross-examination of Robert and Theresa Herebia was inadequate. Contrary to appellant's claims, the record does not reflect that counsel failed to interview these witnesses in preparation for trial. We have reviewed counsel's cross-examination of these witnesses and find that, while not perfect, counsel effectively challenged the witnesses' testimony and when possible elicited favorable evidence from them in support of appellant's defense. The record does not reflect deficient performance by counsel.

### Punishment Phase

 Appellant makes two primary complaints with regard to counsel's performance at the punishment phase: (1) counsel failed to offer evidence of alcoholism, including expert testimony to show that alcohol produced temporary insanity under § 8.04(b) of the Texas Penal Code, and failed to request an instruction on mitigation; (2) counsel failed to object to the introduction of the judgments showing appellant's three prior misdemeanor convictions on the ground that appellant was unaware of the range of punishment. Since appellant's complaints concern alleged errors of counsel at the punishment phase of his bifurcated non-capital trial, we apply the test announced in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980), rather than the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Craig v. State*, 825 S.W.2d 128, 130 (Tex. Crim.App.1992); *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Under this standard, as is true with the *Strickland* test, the burden is on the appellant to demonstrate ineffective assistance of counsel by a preponderance of the evidence. *Moore v.*

*State*, 694 S.W.2d 528, 531 (Tex.Crim.App. 1985); *Jaile v. State*, 836 S.W.2d 680, 683, 686–87 (Tex.App.—El Paso 1992, no pet.). Furthermore, allegations of ineffective assistance will be sustained only if they are firmly founded in the record. *Valdes–Fuerte v. State*, 892 S.W.2d 103, 110 (Tex.App.—San Antonio 1994, no pet.); *Jaile*, 836 S.W.2d at 686–87.

The record does not support either contention. First, there is no evidence in the record that appellant is an alcoholic or that he suffered from alcohol-induced temporary insanity at the time of the offense. Second, the judgments in question were admitted over counsel's objection that they did not reflect on their face that appellant had been advised of the applicable range of punishment. There is no evidence that appellant had not been advised of the punishment range or that he lacked knowledge of the punishment range. Because these allegations are not firmly founded in the record, they are without merit.

For all of these reasons, appellant has failed to establish by a preponderance of the evidence that he was denied the effective assistance of counsel at trial. Point of Error One is overruled.

### NEWLY DISCOVERED EVIDENCE

 In Point of Error Two, appellant asserts that the trial court erred in failing to grant his motion for mistrial and his motion for new trial on the ground of newly discovered evidence.[4] As discussed in Point of Error One, Antricia Hernandez learned about the case through news coverage and during the course of trial called Rochell Buck in the District Attorney's Office. Shortly after concluding this conversation, Buck related the contents of the discussion to the assistant district attorney prosecuting the case, John Westbrook. He, in turn, immediately told defense counsel of Hernandez's statements to Buck. This conversation oc-

---

4. While appellant has phrased this point of error in terms of "newly discovered evidence," his argument set forth in the body of the point of error exclusively concerns prosecutorial misconduct for failure to disclose impeachment evidence. Even though these are two distinct concepts, appellant has provided no argument or authority for his "newly discovered evidence" claim. Because he has failed to properly brief this issue, *see* Tex.R.App.P. 74(d), (f), we could disregard the newly discovered evidence claim. However, we will review both contentions in the interest of justice.

curred sometime after the jury had begun its punishment deliberations. At the conclusion of the punishment phase, but prior to sentencing, appellant made a motion for mistrial on the ground of prosecutorial misconduct due to the failure to disclose impeachment evidence. The court postponed sentencing and held a hearing on the motion for mistrial a few days later.

Rochell Buck, John Ingram, Antricia Hernandez, and two other witnesses who had knowledge of Robert Herebia's statements testified at that hearing. The testimony of Rochell Buck and Antricia Hernandez was set forth in Point of Error One and will not be repeated here. John Ingram, the detective who spoke to Hernandez shortly after the murder, testified that he contacted Hernandez first to notify her of Lujan's death and later in connection with her request for the return of some of Lujan's property, including some photographs and a set of keys. Hernandez made no mention of the information concerning Robert's statements and she otherwise gave Ingram no indication that she possessed relevant facts. As a result, he did not include her name in his reports as a potential witness.

Susanna Clemmons testified that she was present when appellant and Robert stopped by Hernandez's home. She said that Robert, in appellant's presence, told Hernandez that if "he didn't get him, he would get his friends to get Chico." She said that Robert made it sound as though he intended to hurt Lujan "real bad." Clemmons never reported this conversation to anyone in law enforcement. James Nelson, who was also present during this conversation, stated that appellant, Robert, and a third person named Michael Lang came to Hernandez's apartment two or three days before Lujan's death. Robert told Hernandez that he wanted to get some clothes out of her car. In appellant's presence, Robert asked whether Lujan was there, and then instructed Nelson to tell Lujan that he was going to "kick his ass." The three of them left together. At the conclusion of the hearing, the trial court denied the motion for mistrial and proceeded to sentence appellant. Appellant later filed a motion for new trial

based upon newly discovered evidence. That motion was overruled by operation of law.

▇▇▇▇ Appellant argues that the state failed to disclose Hernandez's existence as a potential witness or that she possessed impeachment evidence. The due process clause of the Fourteenth Amendment to the United States Constitution imposes on a prosecutor an affirmative duty to turn over to the accused material, exculpatory evidence. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Ex parte Kimes,* 872 S.W.2d 700, 702 (Tex.Crim.App.1993). Impeachment evidence is considered to be favorable to the accused and is therefore subject to the mandatory disclosure dictates of *Brady. United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985). Thus, a due process violation occurs if: (1) the prosecutor fails to disclose evidence; (2) the evidence is favorable to the defendant; and (3) the evidence is material. *Ex parte Kimes,* 872 S.W.2d at 702. Significantly, *Brady* and its progeny do not require the state to produce exculpatory information that the state does not have in its possession or that is not known to exist. *Hafdahl v. State,* 805 S.W.2d 396, 399 n. 3 (Tex.Crim.App.1990), *cert. denied,* 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). It is undisputed that neither the state nor any of its agents possessed this information until Hernandez called the District Attorney's Office quite late in the trial, and upon learning of this evidence, the state immediately notified appellant's counsel. Therefore, appellant has failed to make the threshold showing.

▇▇▇▇ A new trial shall be granted an accused where new evidence favorable to the accused has been discovered since trial. TEX.CODE CRIM.PROC.ANN. art. 40.001 (Vernon Supp.1995); *Lyon,* 885 S.W.2d at 518. Motions for new trial based upon the alleged discovery of new evidence traditionally lack favor with the courts and are viewed with cautious scrutiny. *Drew v. State,* 743 S.W.2d 207, 225 (Tex.Crim.App.1987); *Lyon,* 885 S.W.2d at 518; *Martinez v. State,* 824 S.W.2d 688, 692 (Tex.App.—El Paso 1992, pet. ref'd). The trial court's ruling on a motion for new trial will not be disturbed absent a clear

abuse of discretion. *Jones v. State,* 711 S.W.2d 35, 36 (Tex.Crim.App.1986); *Lyon,* 885 S.W.2d at 518; *Martinez,* 824 S.W.2d at 692. There are four requirements for obtaining a new trial based on newly discovered evidence:

(1) the evidence was unknown to the movant-defendant at the time of trial;

(2) the failure to discover the evidence was not due to the movant's want of diligence;

(3) the evidence is admissible, and not merely cumulative, corroborative, collateral or impeaching; and

(4) the evidence is probably true and will probably bring about a different result on another trial.

*Eddlemon v. State,* 591 S.W.2d 847, 849 (Tex. Crim.App.1979); *Lyon,* 885 S.W.2d at 518; *Martinez,* 824 S.W.2d at 692.

We find that appellant failed to satisfy the first and second requirements. The evidence, if believed, shows that appellant was present with Robert Herebia when he made the statements to Hernandez. Thus, appellant had personal knowledge of Robert's statements before trial. Further, appellant presented no evidence at the hearing to show why he did not pursue the development of this evidence. The trial court did not abuse its discretion in failing to grant appellant's motion for new trial on this ground. *See Lyon,* 885 S.W.2d at 518 (defendant had evidence in his possession prior to trial); *Martinez,* 824 S.W.2d at 692 (defendant knew of evidence prior to trial because it concerned his own incarceration). Point of Error Two is overruled.

### *VOLUNTARINESS OF APPELLANT'S CONDUCT*

▮▮▮ In Point of Error Three, appellant contends that the evidence is insufficient to support his conviction because it fails to establish the commission of a voluntary act.[5]

In Point of Error Four, appellant argues that the trial court erred in failing to instruct the jury on voluntariness of conduct in accordance with appellant's requested instructions. Because these contentions are related, we will address them together.

Turning our attention to the charge issue, the trial court provided the jury with an instruction on voluntary conduct which tracked appellant's second requested instruction:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 26TH DAY OF FEBRUARY, 1994, in the County of Midland and State of Texas the defendant did then and there cause the death of the said ALFREDO LUJAN, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the conduct of the defendant that caused death to ALFREDO LUJAN was not the voluntary conduct of the defendant, you will acquit the defendant of the offense of MURDER and proceed to consider whether the defendant is guilty of the lesser included offense of INVOLUNTARY MANSLAUGHTER.

Except for an additional portion which is highlighted below, appellant's first requested instruction tracked that provided by the trial court:

"Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 26TH DAY OF FEBRUARY, 1994, in the County of Midland and State of Texas the defendant did then and there cause the death of the said ALFREDO LUJAN, as alleged in the indictment, but you further believe from the evidence, or you have a reasonable doubt thereof, that the conduct of the defendant that caused death to ALFREDO LUJAN was not the voluntary conduct of the defendant *but the*

---

**5.** Although appellant alleges that the evidence is both legally and factually insufficient to support his conviction, his argument and authorities address only a legal sufficiency review. Because appellant has provided no argument or authorities with respect to his factual sufficiency claim, it is not properly briefed, and therefore, presents

nothing for review. *See* Tex.R.App.P. 74(f); *Bell v. State,* 885 S.W.2d 282, 284 (Tex.App.—Beaumont 1994, no pet.); *Ford v. State,* 870 S.W.2d 155, 157 (Tex.App.—San Antonio 1993, pet. ref'd); *Hefner v. State,* 735 S.W.2d 608, 626–27 (Tex. App.—Dallas 1987, pet. ref'd).

*conduct of ALFREDO LUJAN falling against a knife in the hand of the defendant, you will acquit the defendant of the offenses of MURDER, INVOLUNTARY MANSLAUGHTER AND CRIMINAL NEGLIGENT HOMICIDE and say by you [sic] verdict "not guilty" to the [sic] those offenses.*

■ A jury charge should set forth the applicable law of the case without expressing an opinion on the weight of the evidence, summing up the testimony, or discussing the facts or using jury argument to arouse the sympathy or excite the passions of the jury. TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1995). A trial court should never give the jury an instruction that constitutes a comment on the elements of the alleged offense, or assumes a disputed fact. *Grady v. State,* 634 S.W.2d 316, 317 (Tex. Crim.App.1982); *Koffel v. State,* 710 S.W.2d 796, 802 (Tex.App.—Fort Worth 1986, pet. ref'd). A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State,* 717 S.W.2d 26, 32 (Tex. Crim.App.1986); *Richardson v. State,* 766 S.W.2d 538, 541 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Appellant's first requested instruction assumed the truth of certain evidence; namely, the testimony by appellant and Lisa Molinar that Lujan could have fallen upon the knife. Further, the charge given by the court, which followed appellant's second requested instruction, correctly stated and applied the law concerning voluntary conduct. *See Simpkins v. State,* 590 S.W.2d 129, 130 (Tex.Crim.App.1979). Therefore, the trial court did not err in refusing the first requested instruction. Point of Error Four is overruled.

■ In reviewing the sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both state and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve

any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to do so. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim. App.1991). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson,* 819 S.W.2d at 843.

■ Appellant challenges the sufficiency of the evidence to show a voluntary movement on his part, such as extending his arm or thrusting the knife towards Lujan, but he does not challenge the sufficiency of the evidence with respect to the required culpable mental state. A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. TEX.PENAL CODE ANN. § 6.01 (Vernon 1994). A person voluntarily engages in conduct when the conduct includes a voluntary act and its accompanying mental state. *Joiner v. State,* 727 S.W.2d 534, 536 (Tex. Crim.App.1987); *George v. State,* 681 S.W.2d 43, 45 (Tex.Crim.App.1984). That such voluntary conduct also includes an involuntary act does not necessarily render engaging in that conduct involuntary. *Joiner,* 727 S.W.2d at 536; *George,* 681 S.W.2d at 45. Moreover, a defendant's conduct is not rendered involuntary merely because he did not intend the result of his conduct. *Adanandus v. State,* 866 S.W.2d 210, 230 (Tex.Crim.App. 1993); *Joiner,* 727 S.W.2d at 536; *George,* 681 S.W.2d at 45. The issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state. *Adanandus,* 866 S.W.2d at 230.

Appellant correctly states that there are no eyewitnesses who actually saw him stab Lujan. The record, however, reflects several instances of voluntary conduct by appellant: (1) Appellant removed the knife from its sheath and held it in such a manner as to scare Lujan; (2) appellant held the knife in this manner as Lujan walked towards him; (3) appellant continued to hold the knife as it

entered Lujan's body and penetrated five inches into his abdomen; and (3) appellant pulled the knife out of Lujan and took it with him when he left. Appellant testified that he did not remember what happened and he speculated, as did Lisa, that Lujan could have stumbled and fallen onto the knife. However, there is no evidence before us that this is what occurred. There is also no evidence that Lujan ran into appellant, thereby impaling himself on the knife. We find that the evidence is sufficient to permit a rational trier of fact to conclude that appellant engaged in voluntary conduct. Point of Error Three is overruled.

### ALLEGED CHARGE ERROR

In his fifth point of error, appellant argues, citing *Cook v. State,* 884 S.W.2d 485, 491 (Tex.Crim.App.1994), that the trial court committed fundamental error by failing to limit, within the application paragraph, the applicable culpable mental states to focus on the result of his conduct. The first paragraph of the indictment, by alleging that appellant intentionally and knowingly caused the death of an individual, charged him with intentional murder under Tex.Penal Code Ann. § 19.02(b)(1) (Vernon 1994). Intentional murder is a result-of-conduct offense. *Martinez v. State,* 763 S.W.2d 413, 419 (Tex. Crim.App.1988); *Heard v. State,* 887 S.W.2d 94, 100 (Tex.App.—Texarkana 1994, pet. ref'd). Therefore, the definitions of the culpable mental states must be limited to focus on the result of the defendant's conduct. *Cook,* 884 S.W.2d at 491. In the instant case, the trial court properly limited the definitions as required and the application paragraph correctly applied the law to the facts. We do not read *Cook* as requiring the inclusion of an additional limiting instruction in the application paragraph. Point of Error Five is overruled.

Having overruled Points of Error One through Five, the judgment of the trial court is affirmed.