Bobby GEORGE

v.

The STATE of Texas, Appellee.

No. 274–84.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 5, 1984.

Marc May, Odessa, for appellant.

Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

The offense alleged in the indictment in this cause is aggravated assault—intentionally, knowingly and recklessly causing serious bodily injury to another by shooting him with a handgun. V.C.T.A. Penal Code, §§ 22.01(a)(1) and 22.02(a)(1) and (4). In an unpublished opinion the El Paso Court of Appeals found there was evidence to support a requested instruction on what appellant calls the "defensive issue of accident," but was transformed in the court below into a "defense of involuntary conduct;" the court held that refusal of such instruction was error and, accordingly, reversed the judgment of conviction for assault and remanded the cause. *George v. State* (Tex.

App.—El Paso, No. 08–82–00295–CR, delivered December 28, 1983). Concluding that the analysis leading to the finding of the court of appeals is faulty, we will reverse its judgment and affirm that of the trial court.

Sufficiency of evidence to support conviction for assault is not challenged; the material facts of the matter are not substantially disputed. We set them out practically as found by the court of appeals, supplementing its account with an exposition in greater detail when deemed helpful to an understanding of our resolution of the problem presented.

On the late afternoon of a March day, thirteen year old Leonard Martin was visiting younger brothers of appellant in the home of appellant and other members of his family. Appellant was then seventeen. All present were friends. Standing in front of a seated Martin, appellant demanded a dollar from him; when the latter verbally refused to produce it appellant drew a .22 caliber revolver from a pocket, thumbed its hammer partially back and, pointing it at Martin's face, told Martin to "give me the dollar;"[1] the gun discharged, its bullet striking Martin in the left maxilla of his face, crossing the frenulum of the nose and traveling under the skin until it came out from the right frontal area of his face. Appellant threw the gun aside, striking a brother in the chest; he went with Martin to the home of a neighbor to seek aid, but they were denied. At another house, however, an ambulance was summoned.[2]

In his confession and testimony at trial appellant described in greater detail that after he asked Martin a second time for a dollar he cocked the hammer back short of its locked position; that he "stuck [the gun] up in [Martin's] face;" that Martin "turned his face away;" that then "the hammer slipped off my thumb" and the gun "went off." Appellant further told the jury that he did not know the gun would nor did he mean for it to go off "when he cocked the hammer back;" he denied ever pulling the trigger and stated that he did not intend to shoot Martin or harm him in any way—it was an accident.

The offense of assault is committed when one intentionally, knowingly or recklessly causes bodily injury to another; the assault becomes aggravated when the conduct causes serious bodily injury or involves use of a deadly weapon. Sections 22.01(a)(1) and 22.02(a)(1) and (4). In the instant case the trial court fully charged the jury with respect to both offenses, and in a general verdict the jury found appellant guilty of assault. That is, that appellant "intentionally or knowingly or recklessly caused bodily injury to Leonard Martin by shooting him with a handgun." While we do not presume to say what culpable mental state the jury believed had been proved, the fact is that the theory of the case presented by the State was that appellant *recklessly* caused *serious* bodily injury.[3]

---

1. The righthanded appellant drew, thumbed the hammer and held the handgun with his left hand.

2. At trial a treating emergency physician determined that wounds were "not immediately life threatening," and the ophthalmologist to whom Martin was referred for further care agreed with a characterization of wounds to an eyelid as "superficial." They accounted for such relatively slight damage by the angle at which the bullet struck and then glanced; Martin demonstrated to the jury just how the bullet hit at an angle and "bounced" off his face, hit his nose and moved under facial skin to exit from the right frontal area.

3. In his opening argument to the jury the prosecutor emphasized that his medical testimony showed serious bodily injury, and then disclaimed any intention "to prove that Bobby George *intentionally or knowingly* committed this offense," adding "I am not going to ask you to go in there and deliberate on *intentionally or knowingly*." Therefore, he asserted that "the argument in this case is going to boil down to serious bodily injury." For his part counsel for appellant interpreted certain testimony of appellant to mean that he was not aware of any risk in partially cocking the pistol by thumbing back its hammer and, perforce, did not act recklessly. (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

The court of appeals analyzed the situation thus presented as follows:

"In this case, the State chose to proceed on a theory of aggravated assault consisting of intentionally, knowingly or recklessly causing serious bodily injury by shooting with a gun. There is a distinction between voluntarily discharging a weapon in a reckless manner and handling a weapon in a reckless manner *so that it discharges involuntarily or by accident.* This is the case even where the same degree of injury results. The State alleged the former; the evidence raised the latter. Consequently, it was error to refuse the requested charge."[4]

In full Section 6.01(a) reads: "A person commits an offense only if he voluntarily engages in conduct, *including an act, an omission, or possession.*"

In *Williams v. State,* 630 S.W.2d 640 (Tex.Cr.App.1982) this Court found that "[t]here is no law and defense of accident in the present penal code," but it further discerned that the Legislature had not jettisoned the notion.

"The function of the former defense of accident is performed now by the requirement of V.T.C.A. Penal Code, Section 6.01(a), that, "A person commits an offense if he voluntarily engages in conduct ..." *Dockery v. State,* 542 S.W.2d 644, 649–650 (Tex.Cr.App.1976). If the issue is raised by the evidence, a jury may be charged that a defendant should be, acquitted if there is a reasonable doubt as to whether he voluntarily engaged in the *conduct* of which he is accused." *Id.,* at 644.

However, the Court found that overruling an objection to the charge in that respect was not error since "there was no evidence that the appellant did not voluntarily engage in the conduct which injured the complainant; he merely said he did not intend the resulting injuries." *Ibid.*

By its ellipsis of the remaining underscored language of Section 6.01(a), obviously the *Williams* opinion focused on the meaning of "voluntarily" engaging in conduct rather than examining the meaning of "conduct" as used in the penal code. Thus, while instructive on the matter of "voluntariness," *Williams* alone will not solve our problem.

The metamorphosis of Section 6.01(a) is traced in the Practice Commentary following it, and the view of the writers is that the underscored phrase "appears to be a partial definition of 'conduct'"—partial because there is a general definition of "conduct" in Section 1.07—and, therefore, redundant. According to § 1.07(a)(8), " 'Conduct' means an act or omission and its accompanying mental state." And under § 1.07(a)(1), " 'Act' means a bodily movement, whether voluntary or involuntary, and includes speech."

■ While the § 6.01(a) phrase may be somewhat redundant, it also may be in conflict with §§ 1.07(a)(1) and (8) insofar as one can read parts of those two general definitions to mean that "conduct" may consist of an *involuntary* act and its accompanying mental state. Nonetheless, we construe the provisions to mean that one voluntarily engages in conduct when the conduct *includes, inter alia,* a voluntary act and its accompanying mental state, if any. That such conduct also includes an involuntary act does not necessarily render engaging in that conduct involuntary.[5] Nor is conduct rendered involuntary merely because an accused does not intend the result of his conduct. *Williams v. State,* supra, at 644; *Simpkins v. State,* 590 S.W.2d 129, 135 (Tex.Cr.App.1979).

---

**4.** The court further opined that appellant "could have been indicted and properly convicted of reckless conduct," proscribed by V.T.C.A. Penal Code, § 22.05, and noted that a requested instruction to that effect had been refused by the trial court.

**5.** The point is illustrated in the Practice Commentary with an example of an intoxicated driver charged with involuntary manslaughter—he "may not successfully defend with the argument he fell asleep before the collision ..." Note, however, that he may claim his conduct constituted criminally negligent homicide. *Ormsby v. State,* 600 S.W.2d 782 (Tex.Cr.App.1979).

Under the former penal code the Court drew a distinction between accidental homicide and negligent homicide, *viz.:*

"The difference between accidental homicide and negligent homicide is whether the act resulting in death was *intentionally* or *unintentionally* done. The focus is on the accused's act, not on the result of his act. Accidental homicide is the result of an unintentional act while negligent homicide may only result from an intentional act ..." (Emphasis in original.)

*Stiles v. State,* 520 S.W.2d 894, 896 (Tex. Cr.App.1975).

■ While there was disagreement on the rationale in *Dockery v. State,* 542 S.W.2d 644, 647–655 (Tex.Cr.App.1976) (Opinion on Appellant's Motion for Rehearing), all agreed that the "intentional—unintentional" formulation of *Stiles v. State,* supra, is no longer valid. Similarly, the present penal code has changed the focus of reckless criminal assault from an act of violence with *intent to injure* to the *result* that bodily injury is recklessly inflicted. See Practice Commentary following § 22.-02. An intent to injure is not required. *Williams,* supra, at 644.

In *Dockery* there was also disagreement over whether in a homicide case the present penal code requires the State to prove "*both* voluntary conduct and a culpable mental state," *Dockery,* supra, at 650, or just "*a* culpable mental state," *id.,* at 654–655.[6] However, *Dockery* does not address the situation where the proof shows conduct that includes a voluntary act, as well as an involuntary act—nor does *Williams.*

In the instant case the court of appeals found that the evidence raised what it characterized as appellant's "handling a weapon in a *reckless manner* so that *it discharges involuntarily or by accident.*" But "handling" is surely a voluntary act and "reckless manner" is simply another way of saying one is acting "recklessly." Thus appellant is shown to have voluntarily engaged in conduct up to that very second when appellant would have it that "the hammer slipped off my thumb," and the handgun discharged a bullet onto the face of Martin. Under strikingly similar circumstances the *Dockery* court held that "[his] actions were sufficiently voluntary to establish the offense ...," 542 S.W.2d at 650.[7] Compare *Withers v. State,* 631 S.W.2d 595 (Tex.App.—El Paso 1982, affirmed on other grounds, 642 S.W.2d 486 [Tex.Cr.App.1982]).[8]

**6.** It occurs to the writer of this opinion that if the burden of proving voluntary conduct rests on the State, as the three judge majority held in *Dockery,* then absence of voluntary conduct is not a "defense" such that when raised by the evidence must be the subject of an instruction for the jury to acquit if there is a reasonable doubt as to whether an accused voluntarily engaged in the conduct of which he is charged. But the *Williams* court declared that the instruction must be given. *Williams v. State,* supra, at 644.

**7.** Dockery was sleeping face down on a mattress on the floor of a bedroom with a .32 caliber pistol in his hand when the deceased and two others entered; he raised up off the floor and the pistol "accidently went off, just that fast," Dockery then explaining to the two eyewitnesses that he "was trying to uncock the pistol and the pistol went off." *Id.,* at 648.

**8.** In *Withers,* he was seated on a stool trying to repair the "hanging hammer" of a handgun when his wife came out with a puppy and sat on a stool beside him; the puppy jumped into her lap, she pushed it off and it jumped onto Withers; he then pushed the dog away with his hand holding the gun and "the hammer slipped," the gun firing a bullet into the head of his wife. The El Paso Court of Appeals stated the rule to be that "if the discharge of the weapon does not result from the voluntary conduct of the defendant, i.e., conduct of a third party, as in *Garcia [v. State,* 605 S.W.2d 565 (Tex.Cr.App.1980)], then the issue of accidental homicide is raised and an instruction must be given," but found under the circumstances that "there was no [evidence of] involuntary conduct which raises the issue of accidental homicide." *Id.,* at 597.

In *Garcia* the offense charged was murder; this Court noted his testimony that as they were walking along together the deceased gave him a gun with its hammer "already pulled," and when he told deceased that he was going to throw the gun into a canal, the deceased suddenly grabbed Garcia's right elbow with one hand and the gun with his other hand in a move to take it away from Garcia, at which point the gun went off; such testimony was held sufficient to raise an issue of fact as to "the voluntar-

Here the evidence shows that appellant's actions were sufficiently voluntary until "the hammer [of the handgun he was holding] slipped off [his] thumb," but the court of appeals then turned its focus to the handgun, finding that *it* discharged "involuntarily or by accident." We cannot accept that a mechanical object is capable of volition, and if the court meant to say that appellant was not at that moment doing an "act," we do not agree. If the hammer "slipped off [his] thumb," it had to be that the thumb holding the hammer partially back released just enough pressure for the hammer to "slip" forward. However slight, that is "bodily movement" within the meaning of § 1.07(a)(1), and there is no evidence that it was involuntary. Accordingly, the trial court was correct in refusing the requested charge on "defense of involuntary conduct."

 Under the circumstances of this case, however, factually whether appellant's precise bodily movement that released the hammer of his handgun was voluntary or involuntary is of little moment. Where the issue is whether an accused recklessly caused bodily injury by shooting with a gun and the evidence shows that the accused voluntarily engaged in conduct that includes, *inter alia,* one or more voluntary acts leading to the actual shooting, we hold as a matter of law the fact that when such conduct also includes a bodily movement of the accused sufficient for the gun to discharge a bullet, without more—such as precipitation by another individual, as in *Garcia* and *Simpkins,* both supra—a jury need not be charged on the matter of whether the accused voluntarily engaged in the conduct with which he is charged. For that reason also the court was correct in refusing appellant's requested instruction.

The judgment of the El Paso Court of Appeals is reversed and the judgment of conviction entered by the trial court is affirmed.

ONION, P.J., and TEAGUE and MILLER, JJ., dissent.

iness of appellant's conduct," *id.,* at 566. When *Garcia* is contrasted with *Dockery* (see note 7, *ante* and accompanying text), the perception of the court of appeals that such a rule is develop-

ing may be correct. However, it did not apply that rule in the instant case, though "the hammer slipped" and conduct of a third party is not implicated.