**Arthur Lee HENDERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–90–01125–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 13, 1992.

Discretionary Review Refused
June 3, 1992.

Kristine C. Woldy, Houston, for appellant.

Scott A. Durfee, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Appellant was charged with the felony offense of murder, enhanced by four prior felonies. Appellant entered a plea of not guilty to the charged offense. After the jury found him guilty of murder, appellant pleaded not guilty to the enhancement paragraphs. The jury found two of the prior felonies true, and assessed punishment at life confinement in the Texas Department of Criminal Justice. The court, thereafter, rendered judgment in accordance with the jury verdict. In three points of error, appellant complains of the sufficiency of the evidence and that the trial court failed to include appellant's requested charge on accident and the lesser-included charge of criminally negligent homicide. We affirm.

On May 21, 1990, appellant entered the Midnight Lounge between 9:15 and 9:45 p.m. Barbara Henderson, his sister, and Rosemary Snowdon were seated at a table by the door. Appellant walked up to his sister and asked her to hold his gun in her purse. Appellant then sat down at a table near the pool table and began watching the pool game. When appellant started talking to his sister, Michael Jeffries, one of the pool players, told him to shut up. Appellant told Jeffries he couldn't make him shut up and both parties began cursing at each other. Jeffries told appellant to come up to the table and make a bet. Appellant replied that "he didn't want to gamble with him because the only kind of gambling he was going to do was who was going to live or die." The two men stopped arguing and Jeffries resumed his pool game. Shortly thereafter, appellant asked his sister for his gun and said he wanted to go home. His sister reluctantly gave him the gun only after he repeated the request. Jeffries then called appellant a punk, appellant turned around and struck him on the head with his hand. Jeffries stumbled over the side of the pool table and appellant struck him again with his hand. Jeffries fell on the floor and his head landed under the table of a nearby booth. Appellant stood over Jeffries, pulled the slide back on his handgun, and fired a shot under the table of the booth. He then hit Jeffries in the head with the gun and a second shot was fired. Thereafter, appellant ran out of the lounge. His sister testified he no longer was seen at his residence and reputedly left Harris County. He was later arrested and tried.

At the trial, Assistant Medical Examiner, Eduardo Bellas, testified that Jeffries' gunshot wound was a contact wound caused by a gun muzzle actually touching the left side of Jeffries' head when it was fired. Bellas indicated the muzzle of the gun was pointed in the direction of the bullet's path when the shot was fired. Once the bullet entered Jeffries' head, it traveled slightly downward from the left to the right side of the head.

█ In his first point of error, appellant argues that the evidence was insufficient to support a finding of guilty of murder because the intent to cause death or serious bodily injury was never proven. Specifically, appellant alleges the evidence only showed that appellant carried a gun in the bar, but he did not fire at point-blank range at Jeffries' head when he had the opportunity. Appellant's theory of the case is that he only intended to hit Jeffries with the gun when it accidentally fired and struck him.

■ A person commits the offense of murder under Tex.Penal Code Ann. sec. 19.02 if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

TEX.PENAL CODE ANN. § 19.02(a)(1), (2) (Vernon 1989). Tex.Penal Code Ann. sec. 6.03 defines culpable mental states, in pertinent part, as follows:

(a) a person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974). An accused's intent can be inferred from his acts, words, and conduct. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App. 1982). A specific intent to kill may be inferred from use of a deadly weapon per se. *Moreno v. State,* 755 S.W.2d 866, 868 (Tex.Crim.App.1988). A handgun is a deadly weapon per se. TEX.PENAL CODE ANN. § 1.07(a)(11)(A) (Vernon 1974). The use of a deadly weapon infers the specific intent to kill unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Godsey v. State,* 719 S.W.2d 578, 580–81 (Tex.Crim. App.1986). To determine culpability for an offense, the jury was entitled to consider events that occurred before, during, and after the commission of the offense. *Barron v. State,* 566 S.W.2d 929, 931 (Tex. Crim.App.1978).

■ In reviewing the sufficiency of the evidence to support an appellant's conviction, the appellate court must view the evidence in the light most favorable to the jury's verdict. *Chambers v. State,* 805 S.W.2d 459, 460 (Tex.Crim.App.1991). The

proper inquiry is whether any rational trier of fact could have found the essential elements of the offense to exist beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App. 1986). In determining this question, the court must remember that the reconciliation of conflicting evidence is within the exclusive province of the jury. It is not our duty to judge the credibility of the witnesses or to sit as a thirteenth juror. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). It is within the jury's power to determine whether the cumulative force of the incriminating evidence against the defendant merits a guilty verdict. *See Harris v. State,* 738 S.W.2d 207, 220 (Tex.Crim.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

■ Proof of the culpable state of mind is almost always proved by circumstantial evidence. *Warren v. State,* 797 S.W.2d 161, 164 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). On the question of intent, the trier of fact is called upon to review all the evidence and may reasonably conclude from the circumstantial evidence that the requisite mental state existed. *Id.* at 164.

Here, the trial court charged the jury to find appellant guilty if, among other things, they found that appellant either did:

intentionally or knowingly cause the death of Michael Willis Jeffries, hereafter styled the Complainant, by shooting the Complainant with a deadly weapon, namely, a firearm.

intend to cause serious bodily injury to Michael Willis Jeffries, hereinafter styled the Complainant, and did cause the death of the Complainant by intentionally or knowingly committing an act clearly dangerous to human life, namely, by shooting the Complainant with a deadly weapon, namely, a firearm.

The record reflects that appellant and Jeffries had an argument and both parties

began cursing. Appellant refused Jeffries' offer to bet on the pool game and declared he would only gamble on *who lived or died.* At that time, appellant demanded two times that his sister return his gun. Twice, appellant struck Jeffries on the head. He pulled the slide back on his gun to activate it for firing and as Jeffries lay under a booth, appellant fired a shot in his direction. Subsequently, he hit Jeffries in the head with the gun and a second shot was fired. The medical examiner testified Jeffries died from a contact wound caused by a gun muzzle placed directly to his head and that the muzzle of the gun was pointed in the direction of the bullet's path. After the shooting, appellant bolted from the bar and left town. Analyzing appellant's words, acts, cocking and firing a deadly weapon, and flight from the scene and jurisdiction along with the medical examiner's testimony, we find the evidence was sufficient to support the jury's finding that the appellant acted with the above requisite intent to commit the offense of murder. We overrule appellant's first point of error.

Appellant's second point of error contends that the trial court erred in denying appellant's requested jury charge on the defense of accident. Although appellant admits a charge on the absence of voluntary conduct pursuant to Tex.Penal Code Ann. sec. 6.01(a) would have been a better request, he claims the request for a charge on accident is sufficient to notify the trial court of the intended request and would have called the jury's attention to the importance of the question of intent.

There is no defense of accident in the present penal code, and the function of this former defense is performed now by the requirement of Tex.Penal Code Ann. sec. 6.01(a), that "a person commits an offense only if he voluntarily engages in conduct ..." *Williams v. State,* 630 S.W.2d 640, 643 (Tex.Crim.App.1982); Tex.Penal Code Ann. § 6.01 (Vernon Supp. 1991). Although a specially requested charge may be defective, it still may serve to call the court's attention to the need to charge on a defensive issue. *Williams v. State,* 630 S.W.2d at 643.

Thus, the remaining question is whether the voluntariness charge was raised by the evidence. A person "voluntarily engages in conduct when the conduct *includes, inter alia,* a voluntary act and its accompanying mental state. That such conduct also includes an involuntary act does not necessarily render engaging in that conduct involuntary." *Joiner v. State,* 727 S.W.2d 534, 536 (Tex.Crim.App. 1987) (quoting *George v. State,* 681 S.W.2d 43 (Tex.Crim.App.1984)). Moreover, a defendant's conduct is not rendered involuntary merely because he did not intend the result of his conduct. *Joiner v. State,* 727 S.W.2d at 536.

In *Joiner,* the defendant hit the deceased in the jaw with his fist, causing her to fall down. After the deceased told defendant she wasn't afraid of him, he pulled a gun from inside his jacket and shot her. Afterwards, defendant stated, "Oh, my God, I done killed her. It was an accident." The court concluded that even if it assumed the fatal discharge of the gun was unintended, the fact remained that the *intentional pointing of the weapon was a voluntary act* and the resulting death was imputed to the defendant. *Id.* at 537. Further, the court added that the defendant's conduct was clearly voluntary because there was no evidence of a scuffle, of the deceased's striking him or the gun, or of any other movement not willed by the defendant. *Id.*

Additionally, in *George v. State,* 681 S.W.2d at 44, the defendant pointed a revolver at the victim and cocked the hammer short of its locked position. When the victim turned his head, the gun went off. The court concluded that the defendant voluntarily engaged in conduct up to that very second when the hammer slipped off his thumb. Accordingly, the defendant was correctly refused the requested charge on the defense of involuntary conduct. *Id.* at 47.

In the instant case, appellant claims his action was not voluntary because he only attempted to hit Jeffries when his gun fired and killed him. However, the only reference at trial to the defense of accident occurred when his sister gave her personal

opinion that the gun discharged accidentally. At that time, the trial court sustained the State's objection to the answer. Applying the reasoning of the *Joiner* court, appellant's voluntary and deliberate act of hitting Jeffries on the head with his gun imputes the resulting death from the alleged fatal discharge. The evidence does not indicate that Jeffries fought back nor that there was any other movement not willed by appellant. As in *George*, appellant pulled the slide back on his handgun and is, thus, responsible for the fatal results of his voluntary actions. Under the circumstances of this case, we hold that the evidence did not meet the criteria for including the voluntariness defense in the jury charge. Therefore, the court was correct in refusing appellant's request for a charge on accident. Appellant's second point of error is overruled.

In his last point of error, appellant argues the trial court erred in failing to submit his requested charge on criminally negligent homicide. Appellant claims the only evidence of intent came from his sister's testimony that the discharge of the weapon was an accident. In evaluating all the evidence presented at trial, appellant alleges the most serious "intent" proven was that of criminal negligence and the jury was denied the opportunity to consider this the lesser-included offense.

Criminally negligent homicide is defined in the Tex.Penal Code Ann. sec. 19.07(a) as "a person commits an offense if he causes the death of an individual by negligence." TEX.PENAL CODE ANN. § 19.07(a) (Vernon 1989). Tex.Penal Code Ann. sec. 6.03(d) defines the culpable mental state of criminal negligence as:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1974). Whereas the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct, the key to criminal negligence is found in the failure of the actor to perceive the risk. *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App. 1975).

In determining whether a charge on a lesser included offense is required, the following two step analysis is utilized:

> First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.

*Royster v. State*, 622 S.W.2d 442 (Tex. Crim.App.1981). Criminally negligent homicide is a lesser included offense of murder. *Thomas v. State*, 699 S.W.2d 845, 849 (Tex.Crim.App.1985). If evidence from any source raises the issue of a lesser included offense or a defensive theory, it must be included in the court's charge. It is then the jury's duty, under the proper instruction, to determine whether the evidence is credible and supports the defense or the lesser included offense. *See Marras v. State*, 741 S.W.2d 395, 405 (Tex.Crim. App.1987). Every case in which someone points a loaded gun at another or alleges accidental discharge of a gun does not require that a charge on criminally negligent homicide be given. Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another and pulls the slide back to arm it, indicates a person who is not only aware of a risk created by that conduct, but disregards the risk. *Thomas v. State*, 699 S.W.2d at 850. Just because part of the conduct may be "involuntary" does not relieve a defendant of responsibility and culpability for the entire action when he is aware of a risk and disregards it. *Id.* It seems clear that appellant by his actions intended to shoot the deceased.

In the present case, the first prong of *Royster* is met because criminally negligent homicide is a lesser included offense of murder. But is there any evidence in the record that if appellant is guilty, he is guilty of only the lesser offense of criminally negligent homicide? The record reveals appellant was familiar with guns and their potential for injury because he carried one in public. He specifically announced he would gamble on life or death with Jeffries. Appellant was aware the gun was loaded when he pulled the gun's slide back to arm it and deliberately fired a shot in Jeffries' direction. Further, the medical examiner's testimony indicates that the muzzle of the gun was pointed in the direction of the decedent's head due to the path the bullet took. But even if we assume that appellant's theory is correct, we find that by hitting Jeffries in the head with a loaded, armed and deadly weapon, appellant indicated he was aware of the risk that Jeffries could endure serious bodily injury or death. The evidence reflects that appellant was aware of and chose to disregard that risk. His sister's personal opinion that the gun was accidentally discharged does not automatically mandate a charge on criminally negligent homicide. Even if appellant had not foreseen the ultimate consequences of his risk in hitting Jeffries with a loaded, cocked gun, he still was aware of the risk that his conduct might cause harm or death and chose deliberately to pursue that conduct. Therefore, we hold that a jury, under these circumstances, could not have rationally found appellant negligently failed to perceive the risk and was guilty only of the lesser offense of criminally negligent homicide. We find no error in the court refusing to submit appellant's specially requested jury charge on criminally negligent homicide. Appellant's third point of error is overruled.

The judgment is affirmed.