

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00203-CR

LAKEESHIA ALEXANDERIA WRIGHT                                 APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1369809D

----------

## OPINION

----------

A jury convicted Appellant Lakeeshia Alexanderia Wright of murder and assessed her punishment at thirty-eight years' confinement. The trial court sentenced her accordingly. In her single issue on appeal, Appellant contends that the trial court reversibly erred by failing to provide an instruction on voluntary conduct in the jury charge. Because the trial court did not err by failing to provide that instruction sua sponte, we affirm the trial court's judgment.

**Summary of Facts**

Appellant appeals her conviction for the murder of George Esquivel. Appellant and Esquivel were friends and lived with her mother in her mother's apartment. Christopher Lightfoot worked with Esquivel and lived in the same apartment complex as Esquivel and Appellant. The back of Lightfoot's apartment was located diagonally from the back of Esquivel's and Appellant's apartment. On May 13, 2014, Lightfoot picked Esquivel up from work, and the two went to Lightfoot's apartment. Lightfoot's two roommates—Courtney Alexander and Marissa White—were already there, as well as another woman and her two children. The children were in Lightfoot's bedroom playing a video game.

Appellant had been smoking marijuana, drinking alcohol, and doing cocaine. She became angry at Esquivel after her mother told her that Esquivel had paid her mother $30. Appellant testified that Esquivel was supposed to pay $100 in rent to her mother and $35 to her because the electricity was in her name, but he paid her mother only $30 and had not paid Appellant.

Appellant sent Esquivel texts telling him to come get his belongings and get out. Esquivel went to their apartment, and the two began an argument that led to them pushing each other. After Appellant's mother broke up the fight, Esquivel left, took his belongings to Lightfoot's apartment, and asked if he could stay the night. About ten minutes later, Appellant went into Lightfoot's apartment, walked over to Esquivel, and began arguing with him about the rent money. Lightfoot testified that Appellant told Esquivel that because he slept on the floor

in her room, he should pay his rent money to her instead of to her mother. Esquivel replied that he wanted to give the money to her mother because it was her mother's apartment.

White testified that Lightfoot and Alexander held Appellant back because "she started trying to swing at" Esquivel. Lightfoot testified that Esquivel had been sitting, but at some point he stood up. When he did so, he "nudge[d] [Appellant] like to the point where he bump[ed] into her." Appellant testified that Esquivel stood up and pulled her weave out. White testified that Esquivel only put his hand up to "dodge or try to push her back or something like that," causing Appellant's weave to fall out. Appellant became even angrier, accusing Esquivel of hitting "a female."

Appellant left through the back door, stating that she was going to get her "heat." Lightfoot locked the back door after Appellant left and then checked on the children in the back room. Before anyone locked the front door, however, Appellant entered Lightfoot's apartment and shot Esquivel. Appellant left the apartment after firing the gun but returned almost immediately to knock on the apartment's front door in an attempt to retrieve her cell phone.

White administered first aid to Esquivel by applying pressure on his wounds with towels while trying to call 911 on her phone at the same time. Lightfoot was in the back bedroom also trying to call 911 but could not get a good signal. Appellant was still banging on the front door, so Lightfoot went out the back door to ask to use a neighbor's cell phone. While he was at his neighbor's

3

apartment, Lightfoot peeked around the corner to see if Appellant was still at his front door. Lightfoot testified that as soon as he did, Appellant fired off a second gunshot in the air and then spotted him looking at her. Appellant told Lightfoot, "[G]et your ass back in the house or your ass is going to be next."

Angela Mitchell, who lived nearby in Apartment 118, was on her front step smoking a cigarette when she heard arguing coming from Lightfoot's apartment. Mitchell was familiar with Appellant and saw her coming out of Lightfoot's apartment while yelling and arguing with someone else.

When the police arrived, they found Appellant in a back room of Lightfoot's apartment with the lights off.

However, Appellant did not have the gun that she used to shoot Esquivel and told police that she had thrown it into a field. Searching an open field near the apartment complex, the police found a black canvas pouch containing a revolver and several loose bullets. The revolver was a five-shot .38 Special that contained two spent casings, indicating that it had been fired twice. The Fort Worth Police Department's crime laboratory determined that it would take twelve pounds of pressure to fire the revolver if it was uncocked but only three pounds of pressure if it was cocked.

Appellant testified,

> When I stepped in[to Lightfoot's apartment,] I made two steps inside. My foot caught into, like there's this little thresh thing right here, and I tripped on it because I remembered that I looked down. And the moment that I came up, my arm came up, and all I hear was (noise). So when I jumped up, I actually looked up and I opened the

4

door, and I see George sitting there holding his chest.  I had no aim.  I never looked at him, I never seen him, nothing.  But when I opened this door, he's looking at me in his face, and now I'm shocked.  I'm lost.  I'm puzzled.  I don't know nothing, afraid, everything.

Appellant testified that her intention was "[t]o shoot [the gun] in the air and scare them or shoot it in a sense to where it just brought fear, not directly at nobody or towards them."  Appellant also testified that she fired a shot into the air as she was leaving the apartment she shared with Esquivel and her mother before she entered Lightfoot's apartment.  She said that her purpose in firing this shot was to test-fire the pistol.  Appellant admitted that this test-firing was a completely voluntary and intentional act on her part.

Appellant's attorney made no objections to the trial court's final draft of the jury charge, which did not include an instruction on voluntary conduct.

**No Jury Charge Needed on Voluntary Conduct**

Appellant argues that the trial court reversibly erred by failing to include an instruction on voluntary conduct in the jury charge sua sponte.  In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.[1]  The State properly relies on *George v. State*.[2]  In *George*, George pointed a gun at the complainant's face, cocked the hammer of the gun back, and demanded money.[3]  The firearm suddenly discharged, striking the

---

[1] *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

[2] 681 S.W.2d 43 (Tex. Crim. App. 1984).

[3] *Id.* at 44.

complainant in the face.[4]  George claimed that "the hammer slipped off [his] thumb" and that the gun simply "went off."[5]  The Texas Court of Criminal Appeals explained that "handling" is a voluntary act and that George was "shown to have voluntarily engaged in conduct up to that very second when [he] would have it that 'the hammer slipped off [his] thumb.'"[6]  The court noted that "whether [George's] precise bodily movement that released the hammer of his handgun was voluntary or involuntary [was] of little moment."[7]  Because George engaged in conduct that included "one or more voluntary acts leading to the actual shooting," the Court held "as a matter of law . . . that when such conduct also includes a bodily movement of the accused sufficient for the gun to discharge a bullet, without more[,] . . . a jury need not be charged on the matter of whether the accused voluntarily engaged in the conduct with which he is charged."[8]

In the case now before this court, Appellant testified that she intended to fire the gun; she just did not intend to hit Esquivel when she did so.  Appellant admitted that she intended to fire her pistol inside Lightfoot's apartment but claimed that she did not aim the pistol at Esquivel and intended only to scare

---

[4]*Id.*

[5]*Id.*

[6]*Id.* at 46–47.

[7]*Id.* at 47.

[8]*Id.*

6

him, not to hit him. Her testimony is, at best, contradictory. According to her testimony, she intended to fire the gun, but she tripped and accidentally fired the gun. Applying the precedent of *George* to the facts of the present case, we hold that Appellant was not entitled to receive an instruction on voluntary conduct because she engaged in a pattern of voluntary acts that culminated in her shooting Esquivel.[9] The trial court therefore did not err by not providing the instruction sua sponte.

**Conclusion**

Consequently, we overrule Appellant's sole issue and affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

PUBLISH

DELIVERED: June 16, 2016

---

[9] *See id.*

7