**Affirmed and Opinion Filed January 15, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00606-CR

**JT WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F-1676083-Y**

## MEMORANDUM OPINION

Before Justices Bridges, Partida-Kipness, and Pedersen, III
Opinion by Justice Partida-Kipness

A jury convicted JT Williams of murder and assessed punishment at forty years' imprisonment. On appeal, Williams contends that he received ineffective assistance of counsel due to counsel's failure to request a jury instruction on voluntariness. We affirm the trial court's judgment.

### Background

In the pre-dawn hours of July 14, 2016, Williams shot and killed Albert Brown during an argument while sitting in a car in an Oak Cliff park. The argument arose during a conversation between Williams and Brown regarding Williams's suspicion that his girlfriend, Ykella Bickems, had been cheating on him with Brown.

Williams met Brown several years earlier when Williams, Bickems, and Bickems's daughter moved into an apartment near Brown's. The record reflects that Williams and Brown

became friends. Several months before the shooting, however, Williams began to suspect that Bickems had been cheating on him with Brown and another man. Williams called the men to discuss his suspicions, and both men denied the allegations.

Bickems testified that she and Williams moved out of the apartment complex in May 2016. According to Bickems, Williams said he could not stay in the apartment because people were after him, and the couple began staying in various hotels. Williams continued to accuse Bickems of cheating on him after the couple moved from the apartment.

On the night of the shooting, Williams and Bickems were staying in a hotel in Waxahachie. Williams called Brown to ask if Brown would cut Williams's hair. Brown agreed, and Williams and Bickems drove in Bickems's car to Brown's apartment in Dallas. Bickems testified that Williams drove and would not let her sit in the front seat during the trip. Bickems also testified that she typically kept a gun in the car's center console. Williams had begun carrying the gun, and Bickems testified that she saw the gun on Williams earlier that day.

As Williams drove up to Brown's apartment, Brown came out to meet him on the street. Williams told Brown that he wanted some marijuana. Brown said he didn't have any and offered to take Williams to a supplier in Brown's apartment complex. Williams declined and suggested instead that they go to Williams's supplier in Oak Cliff. Eventually, Williams convinced Brown to go with him to Oak Cliff, and Brown got in the front passenger seat of the car.

Williams drove to a park in Oak Cliff that was allegedly around the corner from his marijuana supplier. Williams did not call his supplier but stopped the car and began talking with Brown about his suspicion that Brown had been sleeping with Bickems. Williams testified that Bickem's gun was in a cup holder on the console while he and Brown talked.

Bickems, who was in the backseat during the entire trip, testified that she did not think Brown was aware of her presence because the car was dark inside and she sat quietly looking at

–2–

Facebook photos on her cell phone the entire time. Bickems testified that Williams and Brown initially joked with one another but started arguing after Brown insulted Williams. Bickems said it was normal for Williams and Brown to argue in this way.

Williams testified that at some point during the argument Brown reached for the gun. A "tussle" ensued when Williams attempted to stop Brown. Williams slapped Brown's face, and the gun fell in Brown's lap. Williams testified that the gun went off when he grabbed it from Brown's lap. According to Williams, he did not intend to shoot Brown, but the gun went off accidentally.

Bickems testified that she did not witness the "tussle" but felt the car shift before she heard the gun shot. She looked up immediately after the shot and saw Williams with his arm extended and pointing the gun at where Brown's head had been. Brown was slumped over towards the passenger-side door.

The medical examiner testified that Brown died of a gunshot wound to the head. The medical examiner noted that the bullet entered the left side of Brown's head and exited the right side, "basically straight across, left to right, with no significant vertical deviation or front to back deviation." The rear passenger-side window was shattered by the bullet that passed through Brown's head.

Immediately after the shooting, Williams pulled Brown from the car and pushed the shattered rear passenger-side window into the car. Williams drove back to the hotel in Waxahachie with Bickems in the backseat of the car. Williams and Bickems cleaned up the car and stayed at the hotel until police visited them.

Using Brown's cellphone records, police learned that Williams had been near Brown's apartment on the night of the shooting, and contacted Williams. Police met with Williams and Bickems on July 21, 2016, and impounded Bickems's car. Williams and Bickems were later arrested in Natchez, Louisiana.

Williams initially implicated Bickems in Brown's shooting but later recanted and claimed that he shot Brown in self-defense. Williams also testified that he shot Brown accidentally. When Williams was asked why he had the gun, which was prohibited due to his prior felony conviction, Williams stated that he and Bickems were in danger. The jury found Williams guilty of murder.

**Analysis**

Williams claims that trial counsel provided ineffective assistance by failing to request a jury instruction on voluntariness, instead arguing that Williams acted in self-defense.

To prevail on an ineffective assistance of counsel claim, an appellant must establish both that his trial counsel performed deficiently and that the deficiency prejudiced him. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With respect to the first prong, the record on appeal must be sufficiently developed to overcome the strong presumption of reasonable professional assistance. *See Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Absent an opportunity for trial counsel to explain his actions, we will not conclude his representation was deficient "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

The record indicates that the self-defense theory was discussed during voir dire. Defense counsel also addressed intent as an element of murder and questioned the venire on whether a person charged with murder should receive leniency if he did not intend to kill. The State also discussed with the venire how a murder charge can be reduced by evidence the death was accidental. Williams testified during trial that the shooting was an accident. In closing argument, both defense counsel and the State addressed accident as a possible cause. Defense counsel also argued that the only fact at issue was "what caused the gun to be discharged," and asked the jury

to decide whether Williams discharged the gun in self-defense. The jury charge included an instruction on justified use of deadly force in self-defense.

A person commits a criminal offense only if he voluntarily engages in conduct, including an act, an omission, or possession. TEX. PENAL CODE ANN. § 6.01(a). "'[T]he issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state.'" *Brown v. State*, 955 S.W.2d 276, 280 (Tex. Crim. App. 1997) (quoting *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993)). When evidence of an independent event, such as the conduct of a third party, is presented, a defendant is entitled to an instruction on involuntary conduct when requested. *Id.* at 277, 280.

Counsel is under no duty to raise every defense available, so long as counsel presents a defense that is objectively reasonable or strategically sound. *See Dannhaus v. State*, 928 S.W.2d 81, 85–86 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (counsel's strategy to focus on culpable mental state rather than self-defense, mistake of fact, or voluntariness was not objectively unreasonable in light of the strong evidence of guilt); *see also Vasquez v. State*, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992) ("[J]ust because a competent defense attorney recognizes that a particular defense might be available to a particular offense, he or she could also decide it would be inappropriate to propound such a defense in a given case."). Defensive issues "'frequently depend upon trial strategy and tactics.'" *See Tolbert v. State*, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010) (quoting *Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex. Crim. App. 2007)). Thus, the failure to request an instruction on voluntariness, even if the evidence raises the issue, does not automatically render counsel's performance deficient. *See id.*

In this case, Williams filed a motion for new trial. However, he did not raise a claim of ineffective assistance of counsel in the motion. Thus, trial counsel did not have an opportunity to explain himself in the trial court. *See Garcia*, 57 S.W.3d at 440. Additionally, the record contains

no evidence of an independent event that caused Williams's gun to discharge, *see Brown*, 955 S.W.2d at 280 (voluntariness instruction was warranted on evidence that defendant's gun discharged when defendant was bumped by a third party), and accidental discharge does not merit a voluntariness instruction, *see Adanandus*, 866 S.W.2d at 230 ("The fact that appellant did not initially intend to engage in a struggle with a customer does not render his conduct in doing so involuntary or any of his bodily movements during that encounter involuntary."); *George v. State*, 681 S.W.2d 43, 47 (Tex. Crim. App. 1984) (voluntariness instruction was not warranted on evidence that defendant's gun discharged accidentally when his thumb slipped off the hammer).

## Conclusion

On this record, we cannot conclude that trial counsel's failure to request an instruction on voluntariness was not the result of sound trial strategy. *See Hathorn v. State*, 848 S.W.2d 101, 118 (Tex. Crim. App. 1992) (counsel's attempt to get the jury to find appellant guilty of a lesser offense can be explained as a sound trial tactic); *Dannhaus*, 928 S.W.2d at 85–86. Since Williams has failed to rebut the presumption of trial counsel's competence under the first prong, we need not consider the requirements of the second prong. We rule against Williams on his sole issue and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180606F.U05

–6–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JT WILLIAMS, Appellant

No. 05-18-00606-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F-1676083-Y.
Opinion delivered by Justice Partida-Kipness. Justices Bridges and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of January, 2020.