

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00428-CR

———————————————————

RAUL SALAZAR MARTINEZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1509926D

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

### Introduction

A jury found appellant Raul Salazar Martinez guilty of murder with a firearm and assessed his punishment at 70 years' confinement in the penitentiary and a $10,000 fine. The trial court sentenced Martinez accordingly, and Martinez has appealed.

In three issues, Martinez argues that (1) the trial court erred by not granting his request for a jury instruction on the use of expert testimony, (2) the trial court erred by not allowing evidence of the deceased's propensity for violence, and (3) the evidence was insufficient to support the guilty verdict.

We hold that the trial court did not err by refusing Martinez's requested instruction, Martinez did not preserve his second issue, and sufficient evidence supports the jury's verdict. We thus overrule all three issues and affirm the trial court's judgment.

### Evidentiary Sufficiency

We address Martinez's sufficiency issue first because it could afford him the greatest relief if sustained. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (per curiam); *Windham v. State*, No. 02-19-00063-CR, 2021 WL 386951, at *1 (Tex. App.—Fort Worth Feb. 4, 2021, no pet.) (mem. op., not designated for publication).

## A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

3

## B. The Indictment

In one count consisting of two paragraphs, the State alleged that (1) Martinez had intentionally or knowingly caused Ben Williams's death by shooting Williams with a firearm and (2) Martinez had intentionally, with the intent to cause serious bodily injury to Williams, committed an act clearly dangerous to human life, namely, Martinez shot Williams with a firearm and thereby caused Williams's death.[1] *See* Tex. Penal Code Ann. § 19.02(b)(1), (2).

## C. Evidence

### 1. Martinez's Testimony

Martinez testified that he was afraid of Williams because Williams had been threatening him. According to Martinez, he had previously shared with Williams that he was in the United States illegally, and Williams purportedly wanted the deed to Martinez's house and threatened to sexually assault Martinez's children and call immigration if Martinez did not give him the deed.[2]

On the day of the shooting, Martinez stated that Williams had again asked about the deed, so Martinez lied to Williams and told him that the papers were at an

---

[1]As a general rule, a "count" is used to charge the offense itself, but because a statute sometimes provides for various manners and means of committing an offense, each count may contain as many separate paragraphs charging alternate manners and means as are necessary. *Watts v. State*, 140 S.W.3d 860, 864 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

[2]Martinez explained that he was married and had six children.

apartment. Before taking Williams to the apartment, Martinez said that he first went to a location where he would pick up workers and picked up a man whom Martinez did not know; Martinez explained that having another person with him made him feel safer.[3] Martinez then went back to pick up Williams, and Williams climbed into the pickup with Martinez and the other man.[4]

Martinez maintained that he had no firearm in the pickup but thought that Williams was armed based on a bulge in Williams's shirt. Initially Martinez, Williams, and the third man unloaded the branches from the pickup in one location. Martinez testified that when Williams got out of the pickup to help unload the branches, Williams left his gun under the seat, but Martinez denied taking the gun at this time.

After unloading the branches, Martinez said, he drove to the location where the shooting took place. The unnamed passenger was still with them. According to Martinez, he explained to Williams that they were going to this second location to get the property documents. Martinez admitted at trial that the documents were not there, that he had lied to Williams, and that he was just trying to buy time.

---

[3]Through fingerprints, the police believed that they had identified this man, but when shown a photograph, Martinez denied that the man depicted was the person with him that day. Martinez maintained that the man with him had nothing to do with the shooting and was "just along for the ride."

[4]Williams's girlfriend testified that Martinez came looking for Williams because Martinez needed help with some tree branches that were in the back of Martinez's pickup. When Williams jumped into Martinez's pickup, he told his girlfriend, "I'll be right back."

Martinez asserted that once they arrived, both Williams and the third man got out of the truck. Williams asked about the papers, so Martinez—afraid that Williams was going to do something—grabbed the gun from under the seat. Martinez admitted walking toward Williams with the gun in his hand but denied pulling the gun out of his belt, denied pointing the gun at Williams, and claimed that he did not even know if the gun was loaded.[5]

According to Martinez, Williams lunged at him, and he tried to fire the gun, but it did not go off. While they struggled, though, Martinez heard something that made him realize that the gun had been activated. When the gun went off, Martinez thought that it was pointing to the side, but Williams dropped to the ground, which Martinez asserted frightened him. Not knowing where he had shot Williams, Martinez looked and saw that Williams was bleeding from the mouth.

Martinez testified that although he had wanted to take Williams to the hospital, he got scared and decided, instead, to leave. He denied ever putting the gun back into his belt. The unidentified man climbed into the pickup with Martinez and simply said, "[L]et's go." When Martinez dropped him off at a store, Martinez asked the man to get him some cigarettes because he (Martinez) was nervous; the man complied, after

---

[5]As we will explain, this and other aspects of Martinez's testimony were undermined when, during cross-examination, the State played a video recording of the shooting for him.

which Martinez paid him, and the man left.[6] Martinez then drove to the river and threw the gun into it.

Martinez claimed that he was surprised and shocked when the gun went off and denied wanting to kill anyone. He initially planned to turn himself in to the police but later decided to go to Mexico instead.[7] Martinez denied intending to shoot Williams and asserted that the gun went off by itself while he and Williams were struggling.

### 2. The Video

The shooting was captured on video. In the video, after Martinez, the third man, and Williams get out of a pickup (Martinez and the third man from the driver's side and Williams from the passenger side), Martinez walks deliberately and purposefully around the back of the pickup, pulls a pistol out from his waistband under his shirt with his left hand, and confronts Williams with the pistol displayed in the air. Extending his right arm and putting his right hand on Williams's chest, Martinez then forces Williams to walk backwards across the parking lot to the parking lot's edge until a shed effectively prevents Williams from backing up any farther.

---

[6]A reasonable juror might conclude that Martinez's recounting of this final interaction with someone he claimed was a stranger but who voluntarily got back into the pickup with Martinez after witnessing a shooting seemed unlikely.

[7]The offense occurred on September 6, 2013. The police located Martinez in Houston in August 2017, nearly four years later.

While this is happening, the unknown man watches passively from a safe distance beside the pickup.

At this point, Williams lunges for Martinez's pistol, but Martinez successfully jumps back. Having failed to take Martinez's pistol, Williams raises both hands in a manner that Fort Worth Police Detective Thomas O'Brien described at trial as "almost like in a pleading motion for [Martinez] not to shoot." Apparently taken aback by this development, the third man takes several steps backward.

After a moment, Martinez deliberately and purposefully raises his left arm and extends it towards Williams and, without any hesitation, shoots him. Williams drops to the ground instantly. The unknown man's shoulders visibly wince when the pistol fires; he then moves backward hesitantly to eventually stand behind the pickup.

Martinez then approaches and momentarily stands over Williams before walking away, and as he walks away, he appears to tuck the pistol back in his waistband under his shirt. Gesticulating while looking in Martinez's direction, the unknown man appears to be yelling something at Martinez. The man then walks across the parking lot toward Williams's body before stopping abruptly, turning, and getting back into the pickup.

When confronted at trial with the video, Martinez agreed that it showed him pulling something out of his back waistband. He said, "I don't remember anything like [having a gun in my waistband]. Only now that I'm watching, yes." He denied that Williams was scared but acknowledged that Williams had his hands up. Although he

8

maintained that he and Williams struggled, he blamed the video for not showing the struggle: "You can't see it." "The gun," Martinez said, "went off by itself."

### 3. The Autopsy

A postmortem photograph of Williams shows an entry wound perfectly centered immediately below his lower lip. Dr. Tasha Greenberg, a deputy medical examiner, described the wound as "a one-half-inch circular defect with marginal lacerations." She testified that the autopsy revealed that the bullet had traveled through Williams's chin and mouth and severed Williams's spinal cord, which, she said, would have caused Williams to drop immediately. Based on his wounds, Williams would have lost consciousness very rapidly, if not immediately, and would have died within minutes thereafter.

Gunpowder particles were embedded in Williams's lip. Elsewhere on his face was gunpowder stippling or "tattooing," which Dr. Greenberg described as burned, burning, or even unburned gunpowder deposited on the skin. According to Dr. Greenberg, gunpowder stippling indicated that the shot was from an intermediate range, which is anywhere from a few inches to a few feet, depending on the weapon and the ammunition used. There was no exit wound; "a deformed large caliber copper-jacketed bullet and jacket fragment" were found in Williams's spine.

### D. Discussion

Martinez argues that when the evidence is reviewed as a whole, it is insufficient to support his conviction. We disagree.

9

Although Martinez testified that he was afraid of Williams and that the shooting was accidental and unintentional, the jury was free to disbelieve his testimony. The jury can choose to believe or not believe the testimony of any witness. *Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). The jury can disbelieve even uncontradicted testimony. *Id.* In Martinez's case, the video belied his testimony. After viewing the video, a rational juror could have reasonably concluded that Williams, not Martinez, was afraid and that nothing about the shooting was accidental or unintentional.

Viewing all the evidence in the light most favorable to the verdict, we hold that any rational factfinder could have found beyond a reasonable doubt that (1) Martinez had intentionally or knowingly caused Williams's death by shooting him with a firearm and (2) Martinez had intentionally, with the intent to cause serious bodily injury to Williams, committed an act clearly dangerous to human life, namely, Martinez had shot Williams with a firearm and thereby caused Williams's death. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

We overrule Martinez's third issue. Having overruled Martinez's sufficiency challenge, we turn to his other issues in the order that he presented them.

## Jury Instruction

In his first issue, Martinez contends that the trial court should have granted his request for a jury instruction on the use of expert testimony. Below is his requested instruction:

10

During the trial you heard the testimony of _____, who expressed opinions concerning _____. If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters. Merely because such a witness has expressed an opinion does not mean, however, that you must accept this opinion. You should judge such testimony like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, and all other evidence in the case.

Martinez argues that because other jurisdictions, both federal and state, use this instruction, Texas should, too.

## A. Applicable Law

In reviewing a jury charge, we first determine whether error occurred. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If no error occurred, our analysis ends. *Wright v. State*, 495 S.W.3d 884, 886 (Tex. App.—Fort Worth 2016, pet. ref'd).

Neither a defendant nor the State is entitled to a special jury instruction on a statutory offense or defense if that instruction (1) is not grounded in the penal code, (2) is covered by the general jury charge, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or defense or that tells the jury how to consider certain evidence before it. *Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007).

**B. Discussion**

Martinez acknowledges that he has found no Texas authority supporting his position. He thus acknowledges that his requested instruction is not grounded in the penal code. *See id.*

Next, the jury charge included the following instruction, "You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given their testimony, but you are bound to receive the law from the Court, which is herein given you, and be governed thereby." We conclude that Martinez's requested instruction was already covered by the general jury charge. *See id.*

Finally, Martinez's requested instruction would focus the jury's attention on a specific type of evidence—expert testimony—and would tell jurors how they should consider it. A defendant is not entitled to an instruction that focuses the jury on a specific type of evidence. *See id.* The court in *Walters* explained that such instructions risk commenting on the weight of the evidence. *See id.* at 211–12.

We hold that the trial court did not err by refusing Martinez's requested instruction. *See id.* at 211. Because the trial court did not err, our analysis ends there. *Kirsch*, 357 S.W.3d at 649. We overrule Martinez's first issue.

## Excluded Evidence

Martinez argues in his second issue that the trial court should have allowed evidence of Williams's propensity for violence under Texas Rules of Evidence 401, 402, 403, and 404(b)(2).

12

At trial, Martinez argued that the disputed evidence was admissible under Texas Rule of Evidence 613, which addresses using a witness's prior statement to show the witness's bias or interest. *See* Tex. R. Evid. 613. Specifically, Martinez asserted that the witness, Williams's girlfriend Frances Pasillas, had emotionally broken down twice while testifying, so he wanted to ask her about a statement that she had made in 2013:

> She told Fort Worth Police Officer Campbell that the deceased had been arguing with her, hit her on the head, caused pain, followed her into her room, hit her some more, including punching her in the eye, and then on the 20th, the following day, she told Detective Solano that what she had said the previous day was correct.

Martinez explained to the trial court that he wanted to ask Pasillas about her prior statements to show her bias or interest:

> So I wouldn't go into any criminal cases that were filed or any results of the criminal cases that were filed, but I think that on the issue of bias or interest, in view of her emotional breakdowns in the courtroom, it's important to add a little balance, and I'd be entitled to go into that.
>
> It is subject to the balancing test for 403, but I think that under 613 that the door has been opened for me to go into that.

The State denied that any door had been opened under Rule 613 and objected. The trial court ruled that Martinez could not ask Pasillas about these earlier statements but allowed Martinez to make an offer of proof.

> In his offer of proof, Martinez asserted:
>
> My proffer is that on the 18th of June, 2018 -- excuse me, 2013, the complaining witness, who has just testified, told Officer Campbell of the Fort Worth Police Department that the deceased had been drinking; that he had accused her of cheating on him; that he hit her on the back of the

13

head and on the back; that she went into her room and he followed her into her room, where he squeezed her right hand very hard, causing pain, and then punched her in the eye. And, in addition, she was photographed showing the injury to her eye on that occasion.

The following day, Detective S[ola]no of the Fort Worth Police Department, called to confirm the information that Officer Campbell had been given, and she confirmed that she had been assaulted and that it did cause pain and that she suffered injury.

Martinez's offer did nothing to change the trial court's mind; it again denied his request to ask Pasillas about these earlier statements.

In his brief, Martinez acknowledges that he relied on Rule 613 at trial but argues that the evidence was also admissible to show Williams's violent history under Texas Rules of Evidence 401, 402, 403, and 404(b)(2). *See* Tex. R. Evid. 401 (relevant evidence), 402 (relevant evidence admissible), 403 (when relevant evidence may be excluded), 404(b)(2) (character evidence and evidence of crimes, wrongs, and other acts). Martinez concludes, "Appellant would show that . . . under Texas Rules of Evidence 401, 402, 403 and 404, this relevant evidence of the propensity for violence was improperly excluded by the trial court." What Martinez does not address is why the proposed evidence was admissible under Rule 613, which was the lone basis that he had argued to the trial court.

The proponent of evidence ordinarily has the burden of establishing its admissibility. *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008). Without an objection, the evidence is generally deemed admissible, but if objected to, the

proponent must overcome the stated objection. *Id.*; *Molina v. State*, 450 S.W.3d 540, 552 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Telling the judge that evidence is admissible does not suffice; the proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible. *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). As a prerequisite to presenting a complaint for appellate review, the record must show that the party stated the grounds for the ruling it sought with sufficient specificity to apprise the trial court. *Id.* The same rationale applies to both proffers of evidence and objections to evidence. *Id.* at 179.

Finally, assuming the proponent preserved error in the trial court, the proponent's argument on appeal must comport with its trial-court argument; if the two differ, the appellate argument fails—not having presented the appellate argument to the trial court, the proponent failed to preserve it for appellate review. *See id.* at 179–80. Arguing the (theoretically) correct grounds on appeal does the proponent no good if the proponent argued an incorrect ground at trial and received an adverse ruling on it; the only issue preserved for appellate review is the trial court's ruling on the incorrect ground. *Lemasurier v. State*, 91 S.W.3d 897, 902 (Tex. App.—Fort Worth 2002, pet. ref'd).

Martinez relied on Rule 613 in the trial court. He does not rely on Rule 613 on appeal. Because Martinez's argument on appeal does not comport with his argument at trial, we hold that the arguments presented in his second issue were not preserved

in the trial court and overrule his second issue. *See Molina*, 450 S.W.3d at 552–53 (holding argument that evidence was admissible as the victim's pertinent character trait was not preserved because appellant had not presented it to the trial court).

## Conclusion

Having overruled Martinez's three issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 5, 2021