**REVERSE and REMAND; and Opinion Filed August 8, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00823-CR

### WILLIE MAURICE HERVEY, JR., Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 89th District Court
Wichita County, Texas
Trial Court Cause No. 57,785-C**

## MEMORANDUM OPINION
Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

Appellant, Willie Maurice Hervey Jr., was convicted of murder and sentenced to seventy years' imprisonment. In a single issue on appeal,[1] appellant claims that the trial court erred by not providing the jury with an adequate instruction on voluntariness-of-conduct. We agree with appellant and reverse and remand.

## Background

On April 20, 2014, appellant shot and killed Mark Austin Hawkins during a "marijuana deal gone bad."

---

[1] On June 20, 2017, this appeal was transferred from the Second District Court of Appeals in Fort Worth to this Court under a docket equalization order from the Texas Supreme Court.

In April of 2014, appellant was living with a friend, Crystal Brown. On April 20, 2014, appellant woke early and went to the residence of another friend, De'Amber Koerth. As it was "4/20," a date characterized by appellant as "weed smoking day," he and De'Amber smoked marijuana. After their supply was exhausted, De'Amber called her friend, Hawkins, to buy more. During De'Amber's call to Hawkins, appellant arranged to buy one ounce of marijuana, *i.e.*, 28 grams, for $250. Appellant and Hawkins exchanged telephone numbers but did not set a place to meet.

Appellant returned to Crystal's house and "chilled" until Hawkins called to arrange a meeting for their exchange at a Denny's. Hawkins later called back to say that his car wasn't working and he could not get to the Denny's; he asked appellant to meet him at his house instead.

Appellant testified that when he left Crystal's to meet with Hawkins he had with him $250 and a loaded ten-millimeter Glock gun.[2] The gun, which appellant carried for his protection "most of the time," was between the console and the seat of the car he was driving.[3]

When appellant got to Hawkins' house he pulled into the driveway and Hawkins jumped into the car. Hawkins asked appellant if he had the money and appellant, in turn, asked Hawkins if he had "the weed." Both men pulled out the money and the drugs. Appellant described Hawkins as being "really fidgety."

Appellant weighed the marijuana with his scale and found it to weigh only 26 grams – two grams short of the agreed amount.[4] Appellant asked Hawkins if Hawkins had the other two grams, and Hawkins said "no." Appellant asked "so there's no way you can get the other grams" and

---

[2] On cross-examination appellant admitted he knew, because of his prior convictions, that it was a felony for him to be in possession of this gun.

[3] Appellant testified that he had never been taught how to use a gun; he'd never been to a gun range, attended a gun safety class, or been a member of any organization where he could have learned the proper use and handling of a firearm.

[4] De'Amber Koerth testified that it was Hawkins' habit to "short" his buyers and she did not tell appellant about Hawkins' practice.

Hawkins again said "no." Appellant poured the marijuana back into the jar in which it had been originally contained and told Hawkins "man, I don't even want this shit . . . just go on and get up out of my car."

Hawkins did not get out of the car but rather argued with appellant about the consummation of the sale, saying "why did you come all the way over here for nothing?  You might as well just go on and get it . . . I'll give the other grams to De'Amber."

Appellant then drew his gun "just to scare him (Hawkins) out the car," and pushed Hawkins by the neck and towards the door. Appellant testified that he told Hawkins "man, just get the fuck out of my car, I don't want this shit going on." Hawkins then grabbed the gun.

Appellant and Hawkins wrestled for the gun in the car. Appellant described the struggle as follows:

> [W]e were both sitting down, you know, I'm in the driver's seat, he's in the passenger seat.  And when he grabbed the gun and we started wrestling, I just can't recall how, but we ended up on our knees, both of us are on our knees in the car. I'm on my knees in the driver's seat.  He's on his knees in the passenger seat.  And our back's against the roof . . .

> \*

> [W]e were both like shoulder to shoulder in the car.  The gun was aimed towards the backseat, I believe, at this time. . .

> \*

> [B]oth of our hands are on the gun, but . . . we're moving real hard so his elbow or shoulder hit me in the nose.  I don't know which one hit me in the nose, but something hit me in the nose.

> \*

> I'm telling him (Hawkins), you're not fixing to get this gun from me, just go on and get out the car.  And . . . coming towards the end of the wrestling, he had reached back to the back of the door, I mean, to the door handle, pushed the door open, he stepped his right foot out and as he's coming out with his left foot, he jumps and, you know, at the same time, he pulls the gun and I pulled back and that's when the gun goes off.

–3–

Appellant testified he had his finger on the "trigger guard" the whole time that he and Hawkins were wrestling to prevent the gun from going off so that no one would be shot. However, when Hawkins tried to get out of the car, "[h]e (Hawkins) pulled and I'm pulling back just . . . trying to keep it in my possession and I guess my finger slipped inside . . . the trigger guard. That's when the gun goes off." Appellant testified that he did not intend to pull the trigger, but his finger ended up on the trigger when he "snatched the gun back" from Hawkins who was trying to take the gun from appellant. According to appellant Hawkins never had control of the gun, though he had "ahold" of it when the gun discharged.

Appellant testified that after the gun went off, Hawkins "hollered" and "took off running" towards the porch of the house. As appellant leaned across the seat to close the door, he saw the jar of marijuana rolling towards the crack of the door; appellant grabbed the jar and closed the door. He looked back and saw Hawkins fall to the ground. Appellant then drove away.

Appellant returned to Crystal's residence. He testified that he was not sure if he had shot Hawkins or not. He checked his gun, expecting to see a bullet come out of the head of the gun; a shell came out instead. He checked his car for blood but did not see any blood on the passenger side where Hawkins had been sitting.

Appellant changed his clothes at Crystal's residence. While changing he noticed a little blood on his jeans which he thought probably came from him touching his nose, which was bloody as a result of being hit by Hawkins, and then touching his jeans. He threw the gun inside a drawer. Before he left Crystal's home he told her "if the police ever come asking about my whereabouts, where I've been, you know, tell them I've been with you all night." He took the jar of marijuana with him.

Appellant then spent time getting something to eat and smoking more marijuana with friends. Later that same day he was arrested at a friend's apartment where he'd secreted the jar of marijuana he took from the scene of the shooting in a pile of dirty clothes in that apartment.

Appellant testified that he did not intentionally or knowingly shoot Hawkins, nor did he intend to cause serious bodily injury to Hawkins. He had intended to pay Hawkins for the marijuana and did not have the intent to rob Hawkins of the drugs.

## Indictment

The indictment charged appellant with the offense of murder under two alternative theories:

> [D]id then and there intentionally or knowingly cause the death of an individual, namely, Mark Austin Hawkins, by shooting the body and/or torso of the said Mark Austin Hawkins with a firearm.

> Or

> [D]id then and there, with intent to cause serious bodily injury to an individual, namely, Mark Austin Hawkins, commit an act clearly dangerous to human life that caused the death of said Mark Austin Hawkins, by shooting the said Mark Austin Hawkins on or about the body and/or torso.

*See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2).

## Appellant's Allegations and State's Response

In a single issue, appellant claims that the trial court erred by not properly charging the jury on voluntariness-of-conduct, *i.e.*, whether his act of shooting Hawkins was voluntary, thereby depriving him of his only defense and ensuring that he would be found guilty. Appellant further claims he suffered "some harm" because the only issue before the jury was whether his act of pulling the trigger was voluntary.

The State responds that the jury charge already included adequate instructions on voluntariness-of-conduct. The State further responds that, even if the trial court erred, that error was not preserved because the arguments appellant advanced at trial in support of his requested

instructions differ from the arguments he makes on appeal. The State urges this Court to apply the egregious harm standard for jury charge error.

## Jury Instructions

The trial court sua sponte charged the jury on voluntariness-of-conduct as follows:

11.

An "Act" means a bodily movement, whether voluntary or involuntary, and includes speech.

\*

16.

For the offense of murder, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.

\*

But if you do not so believe, or if you have a reasonable doubt thereof, or if you have a reasonable doubt that the shooting was not the voluntary act or conduct of the defendant, you will acquit the defendant and next consider whether the defendant is guilty of the offense of manslaughter.

The jury charge also contained instructions on the lesser included offenses of manslaughter and criminally negligent homicide. Neither of those instructions contained any instructions on voluntariness-of-conduct, either in the abstract or application paragraphs.

## Appellant's Objections to the Charge

At the close of the evidence, and prior to the charge being read to the jury, a charge conference was held on the record. During that conference, defense counsel made objections to the jury charge and proposed two alternative charges, in writing,[5] on the issue of voluntariness-of-conduct:

---

[5] The first proposed charge read as follows:

[BY DEFENSE COUNSEL]    Under Section 16, first paragraph, it talks about voluntariness.  And under the current status of the law I'm going to provide the Court with . . . (has) . . . been marked as Defendant's Exhibit 4 . . . This is an excerpt on Page 21 of the Texas Criminal Pattern Jury Charge, 2015 Edition, that talks about voluntariness and under the current state of the law of Simpkins v. State, . . . there should be an effort by the Court to fit the voluntariness instruction to the facts of the case.

We have provided two filed instructions . . . we are requesting that the Court include one or both of them as to voluntariness . . . These are both instructions as to voluntariness, alternative instructions as to . . . voluntary acts and . . . requested under Simpkins to fit the voluntariness instruction as required by Simpkins to the facts of the case.  And we are requesting that one or both of those instructions be included instead of the State's brief discussion of voluntariness under Paragraph 16.

---

You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Willie Maurice Hervey Jr., did cause the death of Mark Austin Hawkins, by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or have a reasonable doubt thereof, that the shooting was the result of an accidental discharge of the gun while Mark Austin Hawkins and the defendant were struggling or scuffling for possession of the gun and was not a voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "Not Guilty."

The second proposed charge read as follows:

You have heard evidence that, when the defendant pulled the trigger, his act was not voluntary because his act in pulling the trigger was caused by Mark Austin Hawkins pulling on the gun.

A person commits an offense only if the person voluntarily engages in an act constituting an offense. An act is a bodily movement.

An act is voluntary if it is performed consciously as a result of effort or determination.

An act is not voluntary if it is a non-volitional result of another person's act or it is set in motion by some independent (sic) or it is set in motion by some independent force.

The requirement that the act constituting the offense be voluntary is separate and distinct from the requirement that the defendant have acted with one or more culpable mental states. If you have a reasonable doubt as to the defendant's conduct being voluntary you will say so by a verdict of "Not Guilty."

The prosecutor responded as follows:

> [BY THE PROSECUTOR]  Your Honor, actually, we do pretty much what they want, just not exactly in the order they want.  We have the first two sentences of that contained Paragraph 16, then we have the two application perhaps where they could find the murder and then in the final one, where we talk about reasonable doubt, then we also apply it to the voluntary act or conduct of the Defendant – or if it was not the voluntary act or conduct of the Defendant, then to acquit the Defendant.

The trial court then asked if the language in the charge was "taken from the Pattern Jury Charge" and if the prosecutor had "tracked it." The prosecutor replied: "I do not use the Pattern Jury Charge."[6]

The trial court asked the prosecutor if the statute had been tracked. The prosecutor replied: "[W]hat we did is put what the law is and then . . . at the end of the application paragraph, we include . . . [i]f you don't believe that we've proved it beyond a reasonable doubt or if you don't believe that it's a voluntary act, then you are to acquit." The prosecutor noted that, "[o]therwise, you're going to wind up with multiple . . . paragraphs pretty much saying the same thing."

The trial court then asked defense counsel if he was "being repetitive" and if his proposed charges would confuse the jury. Defense counsel responded that he was "simply requesting that there be one simple paragraph that . . . hits a lot of the facts and talks about voluntary conduct." Defense counsel again noted that two separate alternative charges had been provided to the court.

The trial court overruled defense counsel's objection.

Defense counsel continued his argument saying if "the State is going to split up voluntariness, then it should be included under each section.  It is all criminal conduct . . ." The prosecutor responded "if defense counsel can show how any of the reckless or negligent acts that

---

[6] We recognize that the current version of the Pattern Jury Charges for this defense makes no recommendation as to how a specific instruction should be worded. Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Criminal Defenses* PJC 21.6 (2018).

are alleged were not a voluntary act, we would consider doing so." Defense counsel again reiterated "the law requires a voluntary act" and we're just asking that the Court include the law . . . on each section." The prosecutor responded as follows:

> [BY THE PROSECUTOR] Your Honor, he admitted that he pulled the gun willingly, that he put the gun up to his neck willingly, that he took his weed willingly, nobody made him hide the clothes, hide the gun, any of that stuff. The only thing he contested was the pulling of the trigger. And that's not included as one of the reckless or neglect acts in Paragraphs 17 and 18. The . . . conduct that he engaged in that was reckless and neglect was voluntary according to his own testimony.

The trial court did not alter the wording of the jury charge.

## Analysis

The issue before this Court is a narrow one. The issue is not whether the evidence is sufficient to support appellant's conviction for an intentional and knowing murder; indeed, appellant does not challenge the sufficiency of the evidence and the material facts surrounding the shooting are not substantially disputed.[7] Nor is the issue whether appellant was entitled to a charge on voluntariness-of-conduct; the State did not argue at trial, and does not argue on appeal, that appellant was not entitled to that charge and the charge given to the jury contained some voluntariness-of-conduct instructions. Rather, the issue before this Court is whether the instructions on voluntariness-of-conduct given by the trial court, sua sponte, were adequate to guide the jury in their deliberations. We hold that the jury charge was not adequate.

### The Charge Must Include Law Applicable to the Case

The trial court must provide the jury with a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. The trial judge has a duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged and

---

[7] Appellant was convicted of an intentional or knowing murder by shooting Hawkins with a gun. Use of a deadly weapon raises an inference of intent. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (specific intent to kill may be inferred from use of deadly weapon). A firearm is a deadly weapon per se. TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

is ultimately responsible for the accuracy of the jury charge and accompanying instructions. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

The jury must be instructed under what circumstances they should convict and under what circumstances they should acquit. *Mendez v. State*, 545 S.W.3d 548, 553-54 (Tex. Crim. App. 2018). It is not sufficient for the jury to receive an abstract instruction on the law and then to render a verdict according to a general conclusion on whether that law has been violated; the charge must also apply the law to the facts adduced at trial. *Mendez*, 545 S.W.3d at 553-54; *Gray v. State*, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004). Jury charges which fail to apply the law to the facts adduced at trial are erroneous. *Mendez*, 545 S.W.3d at 555; *Gray*, 152 S.W.3d at 127-28.

### Requirement of a Charge on a Defensive Issue

A defendant is entitled to a jury instruction on a defensive issue if that issue is raised by the evidence, regardless of the strength or credibility of that evidence. PENAL § 2.03(c); *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013). When a trial court judge sua sponte instructs on a defensive issue, the court must do so correctly. *Mendez,* 545 S.W.3d at 553.

In *Mendez v. State,* the defendant was charged with murder and received jury instructions on both murder and the lesser included offense of aggravated assault. *Id*. The trial court, sua sponte, charged the jury in the abstract on the law of self-defense, but applied the law on self-defense only in the application paragraph for murder and not in the application paragraph for aggravated assault. *Id*. Mendez did not object to the charge, and was acquitted of murder but convicted of aggravated assault. *Id*. at 550-51. The Court of Criminal Appeals concluded that the absence of an application paragraph applying self-defense to aggravated assault was erroneous even though the defendant did not object because it was (1) a complete failure to apply an abstract instruction on self-defense to the facts of the case and (2) an incomplete application paragraph. *Id.* at 554. The Court held that because the jury was properly instructed under what circumstances they should convict Mendez

of aggravated assault, the jury should also have been informed "under what circumstances they should acquit" him of that offense. *Id.* at 555.

In reaching its decision, the Court of Criminal Appeals relied on *Vega v. State*, 394 S.W.3d 514 (Tex. Crim. App. 2013) and *Barrera v. State*, 982 S.W.2d 415 (Tex. Crim. App. 1998).

In *Vega v. State*, a prosecution for delivery of a controlled substance, error occurred when the trial court provided the jury with an incomplete charge on the defensive issue of entrapment. 394 S.W.3d at 518-20. The defense had claimed entrapment both by a law enforcement officer, Whitlock, and a confidential informant, Jerry. *Id*. at 516–17. The trial court's charge included abstract and definitional instructions on the defense of entrapment, but the application portion of the charge allowed the jury to consider the inducement only by Whitlock but not by Jerry:

> Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense as alleged, but you further believe, or you have a reasonable doubt thereof, that he was induced to do so by Marshall Whitlock, a law enforcement officer, by persuasion or any other means likely to cause persons to do so, and that the conduct of Marshall Whitlock did not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty.

*Id*. at 518. The Court of Criminal Appeals held that, because the defense of entrapment was "law applicable to the case," these instructions should have included inducement by Jerry, Whitlock, or both, because (1) the evidence showed that Jerry was an agent acting under the control of law-enforcement officers and (2) the defendant testified that it was Jerry who suggested that he deliver drugs to Whitlock. *Id*. at 520.[8]

Similarly, in *Barrera v. State*, a prosecution for attempted murder and aggravated assault resulting from the defendant's act in shooting the complainant where the defendant claimed self-defense, the trial court gave the jury an abstract instruction on self-defense, but did not include an

---

[8] We note that the Court of Criminal Appeals ultimately found this error to be harmless under the egregious error standard. *Vega v. State*, 394 S.W.3d 514, 522 (Tex. Crim. App. 2013).

application section instructing the jury to acquit if it had a reasonable doubt as to self-defense. 982 S.W.2d at 416. Even though Barrera did not object to this charge, the Court of Criminal Appeals held that "the failure to apply the law of self-defense to the facts of the case" was error.[9] *Id*.

Here, the trial court, sua sponte, gave some instructions on voluntariness-of-conduct. That defense became law applicable to the case. It was therefore incumbent on the trial court to properly charge the jury on that defense.

***Requirement of a Voluntary Act***

Before criminal responsibility may be imposed, a defendant's conduct must include a voluntary act. *Farmer,* 411 S.W.3d at 905-6; *Rogers v. State*, 105 S.W.3d 630, 638 (Tex. Crim. App. 2003). The Penal Code provides that a person commits an offense only if "he voluntarily engages in conduct, including an act, an omission, or possession." PENAL § 6.01(a). An "act" is defined as "a bodily movement, whether voluntary or involuntary." *Id*. § 1.07(a)(1). The voluntariness-of-conduct requirement applies to all offenses listed in the Penal Code, even those that do not require a culpable mental state and are considered strict liability offenses. *Farmer*, 411 S.W.3d at 905 (recognizing the general application of PENAL § 6.01(a) to all offenses and applying voluntariness-of-conduct to driving while intoxicated, a strict liability offense); *see also Gonzales v. State*, 632 S.W.2d 899, 903 (Tex. App.—Dallas 1982, pet. ref'd) (noting that a conviction for criminally negligent homicide requires proof that the defendant committed a voluntary act with the requisite culpable mental state).

The issue of voluntariness is separate and distinct from that of culpable mental state. *Febus v. State*, 542 S.W.3d 568, 574 (Tex. Crim. App. 2018); *Brown v. State*, 955 S.W.2d 276, 280 (Tex. Crim. App. 1997). A culpable mental state is an element of the offense which the State must prove

---

[9] The case was remanded to the court of appeals for a harm analysis. *Barrera v. State*, 982 S.W.2d 415, 417 (Tex. Crim. App. 1998).

beyond a reasonable doubt. *Brown,* 955 S.W.2d at 279. Voluntariness, on the other hand, is a defensive issue which must be raised by the evidence. *Id*. When the evidence raises the issue of voluntariness of a defendant's conduct, the jury shall be charged, when requested, on that issue. *Id*. at 280.

### *Sufficiency of a Charge on Voluntariness-of-Conduct*

The Penal Code provides little guidance as to exactly how a proper jury charge on voluntariness-of-conduct should be structured or worded. As noted above, the Penal Code provides only that a person commits an offense if "he voluntarily engages in conduct, including an act, an omission, or possession." PENAL § 6.01(a). While an "act" is defined as "a bodily movement, whether voluntary or involuntary," *Id*. § 1.07(a)(1), the words "voluntary" and "voluntariness" are not defined in the Code.

Case law recognizes that voluntariness-of-conduct refers to a defendant's physical body movements." *Farmer*, 411 S.W.3d at 906; *Rogers,* 105 S.W.3d at 638; *Febus,* 542 S.W.3d at 574; *see also Alford v. State*, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993) (holding that the term "voluntarily" as utilized in PENAL § 6.01(a) means the absence of an accidental act, omission or possession). Involuntariness-of-conduct has also been afforded a specific meaning: if a defendant's physical movements are "the non-volitional result of someone else's act, are set in motion by some independent non-human force, are caused by a physical reflex or convulsion, or are the product of unconsciousness, hypnosis or other non-volitional impetus," that movement is not voluntary. *See Farmer*, 411 S.W.3d at 906; *Rogers,* 105 S.W.3d at 638; *see also Febus,* 542 S.W.3d at 574.

Neither appellant nor the State have cited this Court to any case where the sufficiency of a jury charge on voluntariness-of-conduct in the context of PENAL § 6.01(a) has been evaluated. This Court's research reveals that only a few Texas cases have addressed this or similar issues.

In *Simpkins v. State*, 590 S.W.2d 129, 134–35 (Tex. Crim. App. 1979), *disapproved on other grounds Lugo v. State*, 667 S.W.2d 144 (Tex. Crim. App. 1984), the issue was whether the trial court's instructions gave a complete charge on the law of accident,[10] which had been requested by defendant Simpkins:

> You are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, David Michael Simpkins, *did cause the death of JOHN MILTON by shooting him with a gun, as alleged in the indictment, but you further believe from the evidence, or have a reasonable doubt thereof, that the shooting was the result of an accidental discharge of the gun while Alvin Giddings and the defendant were struggling or scuffling for the possession of the gun and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict not guilty.*

*Id*. (emphasis added). The Court of Criminal Appeals found that this instruction fairly and adequately presented the issue of involuntariness-of-conduct (which had been raised by Simpkins' testimony), that it did not misdirect the jury, was not a comment on the weight of the evidence, and that it correctly stated the law found in the Penal Code. *Id.*

The jury charge in *Reyes v. State,* 11-15-00264-CR, 2017 WL 4799141, at *5 (Tex. App.— Eastland October 19, 2017, pet. ref'd) (mem. op. not designated for publication) is also instructive even though the issue in that case was a challenge to the sufficiency of the evidence rather than lack of a proper instruction on voluntariness-of-conduct:

> You are further instructed that a person commits an offense only if he voluntarily engages in conduct. Conduct is not rendered involuntary merely because the person did not intend the result of his conduct. Thus, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Juan Reyes, did cause the death of Wood Lynn Wood, II by shooting him with a gun, as alleged in the indictment, *but you further believe from the*

---

[10] The current version of the Penal Code does not provide for a defense of accident. *Rogers v. State*, 105 S.W.3d 630, 637-38 (Tex. Crim. App. 2003); *George v. State*, 681 S.W.2d 43, 45 (Tex. Crim. App. 1984). An instruction on "voluntariness" now serves the same function as the former instruction on "accident." *George*, 681 S.W.2d at 45. The Court of Criminal Appeals has expressly recommended that members of the bench and bar avoid using the term "accidental." *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982).

*evidence, or you have a reasonable doubt thereof, that the shooting was a result of an accidental discharge of the gun as a result of being struck by the said Wood Lynn Wood, II and was not the voluntary act or conduct of the defendant, you will acquit the defendant and say by your verdict "Not Guilty."*

*Id.*, at *1 n. 1 (emphasis added). The Eastland Court of Appeals recognized that, while accident is no longer a defense in Texas, this charge, read as a whole, constituted an instruction on voluntariness-of-conduct. *Id.* at * 1.

In *Molinar v. State*, 910 S.W.2d 572, 583–84 (Tex. App.—El Paso 1995, no pet.), a murder prosecution, the defendant requested the following instruction on voluntariness-of-conduct:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 26TH DAY OF FEBRUARY, 1994, in the County of Midland and State of Texas the defendant did then and there cause the death of the said ALFREDO LUJAN, as alleged in the indictment, *but you further believe from the evidence, or you have a reasonable doubt thereof, that the conduct of the defendant that caused death to ALFREDO LUJAN was not the voluntary conduct of the defendant but the conduct of ALFREDO LUJAN falling against a knife in the hand of the defendant, you will acquit the defendant of the offenses of MURDER, INVOLUNTARY MANSLAUGHTER AND CRIMINAL NEGLIGENT HOMICIDE and say by you [sic] verdict "not guilty" to the [sic] those offenses.*

The trial court refused to give this instruction but provided the jury with the following instruction on voluntary conduct:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 26TH DAY OF FEBRUARY, 1994, in the County of Midland and State of Texas the defendant did then and there cause the death of the said ALFREDO LUJAN, as alleged in the indictment, *but you further believe from the evidence, or you have a reasonable doubt thereof, that the conduct of the defendant that caused death to ALFREDO LUJAN was not the voluntary conduct of the defendant, you will acquit the defendant of the offense of MURDER and proceed to consider whether the defendant is guilty of the lesser included offense of INVOLUNTARY MANSLAUGHTER.*

*Id.* (emphasis added). The El Paso Court found that the defendant's requested instruction assumed the truth of certain evidence; *i.e.*, testimony that Lujan could have fallen upon the knife, and would have constituted an impermissible comment on the weight of the evidence had the trial court given

that charge. *Id*. That Court, relying on *Simpkins*, further found that the charge given by the court correctly stated and applied the law concerning voluntary conduct. *Id*. There was no indication in the opinion what voluntariness-of-conduct instructions, if any, were given in the abstract portion of the charge.

### The Charge on Voluntariness-of-Conduct was not Adequate

Even though our existing statutes and case law do not provide an abundance of guidance, the law is sufficiently clear for us to conclude that, because voluntariness-of-conduct was raised as an issue, the trial court had a duty to provide the jury with a charge adequate to guide the jury's deliberations as to the circumstances under which that jury could either convict or acquit appellant. We find that the jury charge given in this case was not adequate.

#### The Charge is Incomplete

First, the charge is incomplete. The jury was not instructed that it could acquit appellant if the jurors found that the shooting was caused by the independent act of Hawkins pulling on the gun and thereby causing appellant's finger to pull the trigger.

In contrast, the jury charges in both *Simpkins* and *Reyes* set out for the jury the nature of an involuntary act which, based on the facts of the case, the jury would need to find in order to acquit the defendant. In *Simpkins*, the charge allowed the jury to acquit the defendant if the jury found that "the shooting was the result of an accidental discharge of the gun while . . . (the complainant) . . . and the defendant were struggling or scuffling for the possession of the gun and was not the voluntary act or conduct of the defendant." *Simpkins,* 590 S.W.2d at 135. In *Reyes*, the charge allowed the jury to acquit the defendant if the jury found that "the shooting was a result of an accidental discharge of the gun as a result of being struck by the said . . . (the complainant) . . . and was not the voluntary act or conduct of the defendant." *Reyes*, 2017 WL 4799141, at *1 n. 1. These instructions were found sufficient to charge on voluntariness-of-conduct.

–16–

*The Charge Limited Voluntariness-of-Conduct to Murder*

Second, the trial court intentionally limited the defense of voluntariness-of-conduct to murder:

> ***For the offense of murder***, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession. Conduct is not rendered involuntary merely because the person did not intend the results of his conduct.
>
> \*
>
> But if you do not so believe, or if you have a reasonable doubt thereof, ***or if you have a reasonable doubt that the shooting was not the voluntary act or conduct of the defendant, you will acquit the defendant (of murder)*** and next consider whether the defendant is guilty of the offense of manslaughter.

Voluntariness-of-conduct was specifically limited to the offense of murder despite the charge also permitting the jury to convict appellant of manslaughter or criminally negligent homicide.[11] From

---

[11] These charges read as follows:

17.

Now, bearing in mind the foregoing instructions, if you find from the evidence, beyond a reasonable doubt that on or about the 20th day of April, 2014, in Wichita County, Texas, the defendant Willie Maurice Hervey did then and there recklessly cause the death of an individual, namely Mark Austin Hawkins, by bringing a loaded firearm to a drug deal, and/or brandishing a loaded firearm during a drug deal, and/or putting a loaded firearm to the neck of the said Mark Austin Hawkins, and/or engaging in a struggle with the said Mark Austin Hawkins while holding and/or displaying a loaded firearm, then you will find the defendant guilty of Manslaughter as included in the indictment.

But if you do not so believe, or if you have a reasonable doubt thereof, then you will acquit the defendant and next consider whether or not the defendant is guilty of Criminally Negligent Homicide.

18.

Now bearing in mind the foregoing instructions, if you find from the evidence, beyond a reasonable doubt that on or about the 20th day of April 2014, in Wichita County, Texas, the defendant Willie Maurice Hervey did then and there cause the death of an individual, namely Mark Austin Hawkins, by criminal negligence by bringing a loaded firearm to a drug deal, and/or brandishing a loaded firearm during a drug deal, and/or putting a loaded firearm to the neck of The said Mark Austin Hawkins, and/or engaging in a struggle with the said Mark Austin Hawkins while holding and/or displaying a loaded firearm, then you will find the defendant guilty of Criminally Negligent Homicide as included in the indictment. But if you do not so believe, or you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

a plain reading of this charge, the jury could have believed that voluntariness-of-conduct was not applicable to those offenses.

*Mendez* is instructive. There, the defendant was charged with murder and received jury instructions on both murder and the lesser included offense of aggravated assault. 545 S.W.3d at 550. The trial court, sua sponte, charged the jury in the abstract on the law of self-defense, but applied the law on self-defense only in the application paragraph for murder and not in the application paragraph for aggravated assault. *Id*. at 550-51. Mendez was acquitted of murder but convicted of aggravated assault. *Id*. at 550. The Court of Criminal Appeals concluded that the absence of an application paragraph applying self-defense to aggravated assault was erroneous because it was (1) a complete failure to apply an abstract instruction on self-defense to the facts of the case and (2) an incomplete application paragraph. *Id*. at 554. The Court held that, because the jury was properly instructed under what circumstances they should convict Mendez of aggravated assault, the jury should also have been informed "under what circumstances they should acquit" him of that offense. *Id*. at 555.

While the jury charge in this case instructed generally on the definition of an "act" in the abstract portion of the charge, the instructions on voluntariness-of-conduct were specifically limited to the offense of murder, and even then the charge was incomplete. There was no instruction applying the law of voluntariness-of-conduct to the lesser included offenses of manslaughter and criminally negligent homicide. Consequently, the jury was informed of the circumstances under which they could convict appellant of those offenses but not the circumstances under which appellant could be acquitted of those offenses.

---

We note that neither of these charges included an instruction requiring the jury to find that appellant voluntarily shot Hawkins before it could convict him of either lesser homicides.

–18–

As noted above, the provisions of PENAL § 6.01(a) are applicable to all offenses. *Farmer*, 411 S.W.3d at 905. By limiting the jury's consideration of voluntariness-of-conduct to murder, the jury charge was impermissibly narrow and misleading.

*The Charge did not distinguish Voluntariness-of-Conduct from*
*a Culpable Mental State*

Third, the charge failed to make any distinction between a culpable mental state and voluntariness-of-conduct. Nowhere in the charge was it explained to the jury that a finding of voluntariness-of-conduct is separate and distinct from a finding of a culpable mental state.[12] Case law is clear that the requirement of a voluntary act under PENAL § 6.01(a) is not subsumed by the mens rea requirement of an offense and is an issue separate from the defendant's mental state. *See Brown,* 955 S.W.2d at 280; *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993). Yet this charge in no way differentiated between a finding of a culpable mental state and a finding of voluntariness-of-conduct.[13]

*Conclusion*

Because voluntariness-of-conduct was raised by the evidence, the trial court had a duty to provide the jury with proper instructions on that defense. The trial court failed to apply the law applicable to the case to the facts adduced at trial. The trial court's jury charge was erroneous.

**Appellant Suffered Some Harm**

Having found error in the trial court's charge, we must now analyze whether appellant suffered harm as a result of that error. *Almanza v. State*, 686 S.W.2d 157, 173–74 (Tex. Crim. App. 1985); *see also Vega,* 394 S.W.3d at 519-20 (holding that when the trial judge provides the jury

---

[12] The charge fully defined the culpable mental states of intentionally, knowingly, recklessly and criminal negligence. PENAL § 6.03.

[13] We note that appellant's second requested charge included the following language: "The requirement that the act constituting the offense be voluntary is separate and distinct from the requirement that the defendant have acted with one of more culpable mental states."

–19–

with an instruction on the defensive issue, but fails to do so correctly, the resulting charge is subject to review for a harm analysis).

Because the claimed error in this case was properly preserved by appellant's timely request for additional instructions and by the objections and arguments defense counsel made on the record,[14] we must reverse if we find the error was "calculated to injure the rights of the defendant," *i.e.*, if there is "some harm" caused to the appellant.[15] *Almanza*, 686 S.W.2d at 171; *see also Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). There must be "actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). In conducting this analysis, we consider the entire record including (1) the jury charge as a whole; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other information revealed by the record as a whole. *Sanchez v. State*, 376 S.W.3d 767, 774-75 (Tex. Crim. App. 2012); *Almanza,* 686 S.W.2d at 171.

### The Entire Jury Charge

The jury charge, when considered as a whole, weighs in favor of concluding that appellant suffered some harm. As detailed above, there are multiple deficiencies in the jury charge which resulted in the jury not being provided with proper guidance as to how to apply the law of voluntariness-of-conduct to the facts adduced at trial. There is nothing in the charge, either in the abstract portions or in the application paragraphs, which serves to ameliorate these deficiencies.

---

[14] We find no merit in the State's argument that appellant failed to properly preserve this error. Appellant requested two specific jury instructions in writing. *See* TEX. CODE CRIM. PROC. ANN art. 36.15. He argued at length at the charge conference in favor of these instructions and made it clear that he was requesting a charge that explained voluntary conduct and applied voluntariness-of-conduct to the facts of the case. The trial court could not, in any way, have failed to understand that appellant's request was for a proper jury instruction on voluntariness-of-conduct.

[15] If no proper objection had been made at trial, a reversal would be required only if the error caused "egregious harm." *Vega*, 394 S.W.3d at 519.

### The State of the Evidence

Appellant admitted that he shot Hawkins, but claimed that his action in pulling the trigger was involuntary as a result of Hawkins pulling on the gun and trying to take it away from him. Absent a proper charge on voluntariness-of-conduct, the jury had no option but to convict appellant of some degree of homicide. This factor weighs in favor of appellant.

### The Arguments of Counsel

Neither the prosecutor nor defense counsel specifically argued whether appellant's act in shooting Hawkins was voluntary or involuntary. Defense counsel focused his argument on appellant's lack of intent to shoot Hawkins and that the shooting was accidental.[16] The State, without ever using the word "voluntary," argued that appellant actions were consistent with an intentional shooting and a "cold blooded execution" as opposed to an accidental shooting. The prosecutor also argued that appellant's testimony was nothing but a "preposterous" and "ridiculous" story and that there was never a struggle over the gun. Because neither party argued voluntariness-of-conduct, this factor does not weigh in favor of either appellant or the State.

### Other Information Revealed by the Record

There were no witnesses to the shooting. Hence, in order to judge the voluntariness of appellant's conduct, the jury had to weigh and judge appellant's credibility. The State presented evidence that appellant told incorrect and inconsistent versions of the events surrounding the shooting to the police in multiple interviews and argued that appellant was still lying at trial. The State also presented evidence and argued to the jury that appellant's actions after the shooting – fleeing the scene, hiding the gun, the marijuana, and his clothes – were indicative of his guilt and his intent to shoot Hawkins. A proper charge on voluntariness-of-conduct was essential if the jury

---

[16] Defense counsel specifically referred to voluntariness-of-conduct during his voir dire of the jury panel: "Crimes require a voluntary act. I'm not going to focus on that too much, but a person commits an offense only if he voluntarily engages in some sort of conduct, including an act, an omission or possession."

in this case was to be guided as to how to apply that law to appellant's sole defense. Lacking that guidance, the jury not only found appellant guilty of murder, but subsequently assessed a hefty sentence of seventy years' imprisonment. This factor weighs in favor of appellant.

After reviewing the entire record, we conclude that appellant suffered some actual, as opposed to theoretical, harm as a result of the trial court's error. Accordingly, we sustain appellant's sole issue.

## Conclusion

Having sustained appellant's sole issue, we reverse the trial court's judgment and remand to the trial court for a new trial consistent with this opinion.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

170823F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIE MAURICE HERVEY, JR., Appellant

No. 05-17-00823-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 89th District Court, Wichita County, Texas
Trial Court Cause No. 57,785-C.
Opinion delivered by Justice Osborne. Justices Myers and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 8th day of August, 2019.